BLANCHE MOODY, Plaintiff, *v.* THE CHICAGO TRANSIT AUTHORITY *et al.,*
Defendants.

---

SILVERCUP BAKERS, INC., Counterplaintiff-Appellant, *v.* THE CHICAGO
TRANSIT AUTHORITY, Counterdefendant-Appellee.

---

THE CHICAGO TRANSIT AUTHORITY, Counterplaintiff and Cross-Appellant,
*v.* SILVERCUP BAKERS, INC., Counterdefendant and Cross-Appellee.

(No. 57416; ▓▓▓▓▓▓▓▓▓)

First District (1st Division)—January 14, 1974.

HALLETT, J., specially concurring.

Jacobs, Williams and Montgomery, Ltd., of Chicago (Barry L. Kroll,
of counsel), for Silvercup Bakers, Inc.

Rothschild, Barry & Myers, of Chicago (John J. Devine and Norman J.
Barry, of counsel), for Chicago Transit Authority.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

The problems which this appeal sets before us had their genesis when
Blanche Moody (plaintiff) brought suit for personal injuries against
Chicago Transit Authority (C.T.A.) and Silvercup Bakers, Inc. (Silver-
cup). Silvercup filed a counterclaim against C.T.A. seeking indemnity on
an active-passive theory. C.T.A. filed a counterclaim against Silvercup
seeking indemnity upon the same theory. The entire matter was sub-
mitted to a jury without severance of the issues. The jury returned a
verdict in favor of plaintiff against C.T.A. and Silvercup, awarding dam-
ages of $270,000. It answered affirmatively a special interrogatory asking

if the driver of the C.T.A. vehicle was "guilty of negligence that was a proximate cause of the injury to the plaintiff." In addition, the jury found in favor of Silvercup and against C.T.A. on the counterclaim of the former and awarded damages against C.T.A. in the amount of $190,000. It found in favor of C.T.A. on its counterclaim against Silvercup and awarded damages of $80,000 to C.T.A.

The trial court entered judgment in favor of C.T.A. on the Silvercup counterclaim and in favor of Silvercup on the C.T.A. counterclaim notwithstanding both verdicts. Silvercup has appealed, with a cross-appeal by C.T.A. We were told by counsel for both parties on oral argument that the judgment in favor of plaintiff has been satisfied. The merits of the verdict for plaintiff are therefore not before us.

Silvercup urges that the verdict of the jury in its favor on its counterclaim is adequately supported by the evidence; a judgment for full indemnity should be entered in Silvercup's favor; or, alternatively, the trial court should have granted a new trial. The C.T.A. urges that the trial court properly entered judgment in favor of C.T.A. on Silvercup's counterclaim because Silvercup was guilty of active negligence and its counterclaim was barred because of the absence of a pre-tort relationship between the parties. The C.T.A. also contends that the trial court did not err in refusing to enter a judgment for indemnity in favor of Silvercup or in denying Silvercup's motion for new trial. C.T.A. finally urges that the trial court erred in entering judgment in favor of Silvercup on the counterclaim of C.T.A. and in denying the motion of C.T.A. for a new trial on its counterclaim.

Plaintiff's injuries occurred on the morning of March 3, 1967, at, or about, the northeast corner of the intersection of Forest Avenue and 95th Street in Chicago. Plaintiff, a minor 16 years of age, on her way to school, testified that she walked south on the east side of Forest Avenue to the bus stop. There was quite a large residue of snow and ice at the intersection remaining from the historic Chicago snowfall of January that year. A quantity of icy snow covered the curb and part of the street at the crosswalk on the east side of Forest Avenue. The bus stop was immediately to the east of the crosswalk. The bus stop area had been cleared. It was marked by the usual "No Parking" signs.

The Silvercup driver was engaged in delivery of bread. His vehicle was about 20 feet long. The driver testified that he was aware that he parked in a bus stop which was evidenced by two signs. He parked his truck in front of a car to the east which was also within the bus stop area. The truck was angle-parked with the front wheels close to the crosswalk. The rear of the truck projected some 10 feet into the lane of westbound

traffic on the north side of 95th Street. The driver then crossed the street to a grocery store on the south side of 95th Street.

In a short time, he returned to the truck for bread to deliver to the store. The automobile parked behind his truck had moved by then and he noted a cleared spot to the rear of his truck into which he could have moved it. He did not do so but walked in front of the truck and obtained the loaves of bread from a door on the right front side. He then walked around the front of the truck and started back across to the grocery store. He saw a C.T.A. bus coming west on 95th Street some 15 or 20 yards away. The bus was decreasing its speed. At that time, the witness also noticed at a glance a person running south on Forest Avenue but did not remember if he could identify the individual even as regards sex. This person was then some 15 yards to the north. As the driver was in front of the truck, or in the street towards its front, carrying the bread, the bus passed him to his right, proceeding in a westerly direction. The side of the bus was about three feet from him. He then saw a young lady pass the front of the truck and, just as she reached the bus, which had come almost to a stop, she slipped and slid beneath it.

Plaintiff testified that she arrived at the bus stop several minutes before the accident. She noticed the Silvercup truck parked in the bus stop at an angle with the front end blocking the cleared boarding area. In order to determine if a bus was coming, she was obliged to clamber over the ice and snow which obstructed the crosswalk at the curb and walk into the street some 10 feet. Plaintiff did this once and saw no bus. She did it again a few moments later and saw a bus a block or a block and a half to the east. She waved to the driver but did not know if he saw her. As the bus approached, she moved backwards as close to the ice mound as she could get. At that time, she was standing inside the crosswalk quite close to the front end of the truck. She thought that the bus would stop in the traffic lane south of the parked cars but it cut in "sharply" and "started to slide." She saw the bus slide closer to her, stepped back on the ice and slipped. She attempted to brace her hands up against the bus but slid under it.

The C.T.A. driver testified that he had previously stopped the bus two short blocks east of Forest Avenue on 95th Street. He then proceeded in a westerly direction. When he had covered about one half of the distance to Forest Avenue, a passenger signaled his intention of leaving the bus at the Forest Avenue stop. The driver slowed down for the stop. As he approached to about 30 feet from Forest Avenue, he saw a girl running south on Forest, about 30 feet north of 95th Street. As he approached the Silvercup truck, the bus was traveling about five miles per hour. He did

not see plaintiff in the street waiving at him. As he pulled around the Silvercup truck, in order to have the front door of the bus beyond or to the west of the truck, he saw the plaintiff falling or "going down" when she was just a little bit behind the front door of the bus. In his opinion, the bus did not move more than a foot or a foot and a half from the time he first saw plaintiff until it stopped. He jumped out immediately and saw plaintiff beneath the bus. Someone said that the bus was on her leg and he then returned and moved the bus. In addition there was testimony by an eyewitness that he heard a screech of brakes and that he turned and saw the bus sliding toward the curb.

The basic substantive legal principles which govern the rights of these parties have been repeated with great frequency. They are well summarized in *Carver v. Grossman*, 55 Ill.2d 507. The issue here is whether the conduct of either party was "the primary cause or active negligence" as distinguished from "the secondary cause or passive negligence." (See *Carver*, 55 Ill.2d at 511.) In making this determination "the facts of the case must clearly justify indemnification." See *Carver*, 55 Ill.2d at 512.

Silvercup argues with considerable force that the bus swerved sharply to the right as it approached the front of the parked truck. This is supported by the testimony of plaintiff that the bus cut in sharply and started to slide and by the testimony of the eyewitness. Silvercup urges that the failure of the driver to see plaintiff when he swerved around the standing truck was thus the primary cause of the occurrence and that C.T.A. was guilty of active negligence. Silvercup also points out the affirmative finding by the jury of negligence of the driver in response to the special interrogatory and also the larger amount of damages allowed Silvercup on its counterclaim as compared with the damages assessed against it on the counterclaim of C.T.A. Silvercup contends that the only basis for its liability to plaintiff was the parking of the truck in violation of a local ordinance and that such negligence could only be "a" but not "the" proximate cause of the injuries.

On the other hand, C.T.A. contends, with equal force and justification, that the Silvercup driver was aware of the dangerous condition which he caused; that he deliberately drove his truck into the cleared bus stop and parked illegally by occupying this area (Ill. Rev. Stat. 1971, ch. 95½, par. 11—1303 and Municipal Code of City of Chicago, sec. 27—311); he added inordinately to the danger of the situation by parking his truck at an angle from the curb which was also an illegal act (Ill. Rev. Stat. 1971, ch. 95½, par. 11—1304 and Municipal Code of City of Chicago, sec. 27—305) and by the very position of his vehicle he obstructed plaintiff's vision and compelled her to enter a position of danger. C.T.A. urges that

this negligence was compounded by the fact that the driver returned to the truck to obtain bread for delivery, noted that he had an opportunity to straighten his vehicle and to move it back to the east so as to ameliorate the situation but failed to do so and thus perpetuated the danger.

Both parties depend upon the various verdicts reached by the jury as well as upon the answer to the special interrogatory. All of these assertions must be regarded as pure speculation. No person really knows the factors which motivated the jurors in reaching the verdicts which they finally returned. In a situation of this type, it is necessary for the court to make the proper determination of the rights of the parties. The verdicts as returned could hardly have been approved by the trial court. Also, since all of the evidence was in the record without claim of trial error, the entry of orders for new trial on both counterclaims would have been neither necessary nor wise.

■■ Determination of this question is not a matter of proceeding according to the usual dictionary definitions of the words "active" and "passive". These words are terms of art and they must be applied in accordance with concepts worked out by courts of review upon a case by case basis. Under appropriate circumstances, inaction or passivity in the ordinary sense may well constitute the primary cause of a mishap or active negligence (*Topel v. Porter*, 95 Ill.App.2d 315, 330, 237 N.E.2d 711). It has been appropriately stated that "mere motion does not define the distinction between active and passive negligence." (*Trzos v. Berman Leasing Co.*, 86 Ill.App.2d 176, 183, 229 N.E.2d 787.) In the case before us, we have reached the conclusion that the contentions advanced by each party against the other are equally valid and forceful and that both are guilty of active negligence. The contributions of both parties to cause the mishap were of equal significance. There is no "qualitative distinction between the negligence of the two" counterclaimants. (See specially concurring opinion in *Gertz v. Campbell*, 55 Ill.2d 84, 93, 94, 302 N.E.2d 40.) The conduct of each was "the primary cause or active negligence."

■■ It follows necessarily that neither Silvercup nor C.T.A. may have indemnification against the other. This principle has been expressed and repeated in a number of cases. See *Stewart v. Mister Softee of Illinois, Inc.*, 75 Ill.App.2d 328, 330, 221 N.E.2d 11. See also *Gillette v. Todd*, 106 Ill.App.2d 287, 294, 245 N.E.2d 923 cited in *Carver v. Grossman, supra*.

In view of the conclusions above reached, we need not discuss the many authorities cited in the briefs submitted by able counsel for both parties and we need not consider the remaining contentions raised by

the parties. The trial court acted properly in entering judgment against both counterclaimants notwithstanding the jury verdicts.

Judgment affirmed.

BURKE, J., concurs.

Mr. JUSTICE HALLETT specially concurring:

While I fully concur in the foregoing opinion holding that indemnity is barred because both were "actively" negligent, I am constrained to add another basis for denying recovery on the counterclaim for indemnity. *Reynolds v. Illinois Bell Telephone Co.*, 51 Ill.App.2d 334, 201 N.E.2d 322, and *Trzos v. Berman Leasing Co.*, 86 Ill.App.2d 176, 229 N.E.2d 787, and *Sargent v. Interstate Bakeries*, 86 Ill.App.2d 187, 229 N.E.2d 769, both of which cited and followed *Reynolds* in reversing me, all held, at least in the pleading state, that one driver, alleging that he was only "passively" negligent, involved in an automobile accident, is entitled to be indemnified (for a bona fide settlement or judgment) by another allegedly "actively" negligent driver involved in the same accident, even though the drivers had no relationship whatsoever one to the other prior to said accident. Apparently the rationale of these cases is to "mitigate" the supposedly "harsh" Illinois rule barring contribution between joint tortfeasors. (See *Muhlbauer v. Kruzel*, 39 Ill.2d 226, 234 N.E.2d 790; and *Carver v. Grossman*, 55 Ill.2d 507.) As I have said before, I disagree with this attempted solution and am of the considered opinion that this line of cases has caused and is still causing difficulties in the trial and reviewing courts out of all proportion to the supposed "harsh" rule it is supposed to "mitigate." It should also be noted that *Reynolds, Trzos* and *Sargent* were all decided before the Supreme Court handed down *Muhlbauer v. Kruzel*, (the "clown" case), 39 Ill.2d 226, 234 N.E.2d 790. There the court cited this line of appellate cases and although it did not expressly overrule them, it did overrule them by implication in that it affirmed the trial court's dismissal of a third-party complaint for indemnity because such a complaint (page 231):

> "* * * must disclose some relationship upon which a duty to indemnify may be predicated."

In the case at bar, there was absolutely no relationship between Silvercup and the C.T.A. before the accident and I would therefore affirm even had Silvercup not been "actively" negligent.