The OHIO CASUALTY INSURANCE COMPANY, Plaintiff-Appellee,

v.

Max D. RYNEARSON, etc., Defendant and Third-Party Plaintiff-Appellant,

v.

PORTER AND BOSTON, INC., Third-Party Defendant-Appellee.

No. 73–1736.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1974.

Decided Dec. 2, 1974.

Stanley D. Lytal, Fort Wayne, Ind., for appellant.

John T. Hume, III, William M. Osborn and Grace M. Curry, Indianapolis, Ind., for appellee.

Before SPRECHER and TONE, Circuit Judges, and PERRY, Senior District Judge.*

PERRY, Senior District Judge.

This is an appeal by defendant-appellant, Max D. Rynearson, etc. ("Rynearson"), from a judgment of the District Court which granted a motion for summary judgment in favor of plaintiff-appellee, the Ohio Casualty Insurance Company ("Ohio Casualty"), upon its complaint for declaratory judgment, denied Rynearson's cross-motion for summary judgment, and dismissed Rynearson's third-party complaint against defendant-appellee, Porter and Boston, Inc. ("Porter and Boston").

There are two issues: (1) Did the District Court err in granting summary judgment for Ohio Casualty? (2) Did the District Court err in dismissing Rynearson's third-party complaint against Porter and Boston?

The District Court made findings of fact summarized as follows:

On or about June 28, 1968, Ohio Casualty issued a liability insurance policy to Max D. Rynearson, d/b/a Hamilton Shores. Under the terms of the insurance contract, Ohio Casualty agreed to pay on behalf of Rynearson all sums which he may become legally obligated to pay as damages because of bodily injury or death to others arising out of premises located ¾ mile southeast of the city limits of Goshen, Indiana on the west side of U.S. Highway 33, Elkhart Township, Elkhart County, State of Indiana, which premises were used as a drive-in restaurant. On or about May 4, 1969, Chris W. Yoder, a tenant of the restaurant, was fatally electrocuted while working in the restaurant. On either May 4th or 5th, 1969, Rynearson became aware of Yoder's electrocution and death, but failed to notify Ohio Casualty or its agents of the occurrence until March 19, 1971. Ohio Casualty had no knowledge of said occurrence until March 19, 1971. On March 17, 1971, Sadie W. Yoder, Administratrix of the Estate of Chris W. Yoder, deceased, filed a lawsuit

---

* Senior District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation.

against Rynearson in which she alleged that Yoder's death was the proximate result of careless and negligent conduct on the part of Rynearson. The aforementioned liability policy defined an "occurrence" as follows: "An occurrence means an accident including injuries, exposure to conditions which results during the policy period in bodily injury or property damage, neither expected nor intended from the standpoint of the insured." The policy also contained the following clause relating to the duty of the insured in the event of occurrence, claim or suit:

> In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. The named insured shall promptly take at his expense all reasonable steps to prevent other bodily injury or property damages from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy.

The policy was in effect during the period June 28, 1968 to June 28, 1969. The policy specifically described the aforementioned restaurant in the description of hazards section as follows: "¾ Mile S/E of the City Limits of Goshen on W/S of U.S. 33 S/E, Elkhart, Twp., Elkhart Co., Ind." Rynearson had prior experience in liability insurance matters by virtue of the following:

(a) From 1956 until 1958 he was a Claims Adjuster for State Farm Mutual Insurance Company.

(b) From 1959 until 1964 or 1965 he was a Claims Adjuster for State Farm Mutual Insurance Company and during this period of time he was promoted to Claims Superintendent in charge of other Claims Adjusters.

(c) For approximately one year to one-and-a-half years during 1965 and 1966, Rynearson was Claims Manager for National Union Insurance Company.

(d) Rynearson has been a practicing lawyer since 1965 or 1966.

(e) Since 1956, Rynearson has had extensive experience in handling liability claims under the terms and conditions of liability insurance policies.

In an affidavit in support of his motion for summary judgment, Rynearson stated that he did not report the occurrence in question to any representative of Ohio Casualty until a lawsuit had been filed, for the following reasons:

A. Rynearson leased the premises in question to Chris W. Yoder, deceased.

B. Yoder asked for and received permission to make miscellaneous changes, including electrical changes, in the restaurant.

C. When Rynearson received notice of the death of Yoder, it was his understanding that Yoder had electrocuted himself by grabbing hold of a "hot" 220 volt line.

D. At first blush, Rynearson did not think he had any insurance to cover the occurrence because of the existing relationship between himself and Yoder.

E. Only after a search borne of desperation did Rynearson finally discover the endorsement, and then only after a lawsuit had been filed.

On February 5, 1973, Rynearson filed a third-party complaint against Porter and Boston, alleging that he did not notify Ohio Casualty or any of its authorized agents of Yoder's electrocution and death until March 19, 1971 because he thought, due to the following wrongful omissions of Porter and Boston, that he had no insurance coverage:

(a) Porter and Boston negligently failed to advise Rynearson verbally that he had coverage for the drive-in restaurant when the policy was delivered.

(b) Porter and Boston negligently failed to advise Rynearson in writing that he had coverage.

(c) By the design of its policy, Ohio Casualty negligently and carelessly, by and through its agent Porter and Boston, failed to apprise and failed to give Rynearson notice of the coverage afforded him.

Rynearson further alleged that because of the trust placed by him in Porter and Boston, there was created a fiduciary relationship flowing from Porter and Boston to Rynearson, and that Porter and Boston breached that relationship by failing specifically to advise Rynearson of the coverage available to him. Rynearson also alleged that he contracted with Porter and Boston for the purpose of obtaining liability insurance on the drive-in restaurant, and that Porter and Boston breached this contract by failing specifically to advise Rynearson of his specific rights and of the specific fact that such insurance was available to him.

### The Declaratory Judgment Action

■ Rynearson strongly contends that the design of the policy misled him into the belief that there was no coverage for Yoder's death. We must reject this contention for several reasons. First, the extension schedule of the policy describes the premises of its coverage in much the same manner as was used to identify the premises of the drive-in restaurant in the lease agreement by which Rynearson leased the restaurant to Yoder. The extension schedule describes the premises as ¾ of a mile southeast of the city limits of Goshen, on the west side of U.S. 33, Elkhart Township, Elkhart County, Indiana. The schedule also indicates that the coverage is "a lessor's risk only." The lease agreement describes the premises as being located on U.S. Highway 33, one-half mile southeast of Goshen, Elkhart County, Indiana. Second, and most important, Rynearson

is a practicing lawyer with several years of experience as a claim adjuster, claim supervisor, and claim manager of insurance companies. With his background, Rynearson possessed special knowledge of insurance contracts, a circumstance which causes him to be held to a higher standard of care in giving notice of a loss. See Stuyvesant Insurance Co. v. United Public Ins. Co., 139 Ind.App. 533, 543, 218 N.E.2d 379, 221 N.E.2d 358, 360 (1966), where the court held that insurance corporations, due to the superior knowledge available to them, should be held to a higher standard of reasonable time to give notice of a loss. To like effect, in McPherson v. St. Paul Fire & Marine Ins. Co., 350 F.2d 563, 567 (5th Cir. 1965), the court said:

> . . . The record fails to disclose the existence of any extenuating circumstances which would require a relaxation of the notice requirements. [citation omitted.] Lack of knowledge of coverage in the circumstances here present does not constitute a valid excuse for failure to give notice [citation omitted.] J. B. McPherson [the insured] previously had been a licensed general insurance agent for 15 years and was experienced in the insurance business. . . .

Third, although late notice has been excused where the insured was unaware of the existence of a policy, Metropolitan Life Ins. Co. v. Peoples Trust Co., 177 Ind. 578, 584, 98 N.E. 513, 515 (1912), it is not excused where the insured alleges that he was unaware of coverage simply because he failed to read his policy. See General Accident Fire & Life Assurance Corp. v. Prosser, 239 F.Supp. 735, 738 (D.Alaska 1965), where the court said:

> Prosser knew about the liability policy that he had but he didn't know it covered the accident. The only reason Prosser did not have this knowledge is the simple fact that for approximately 23 months he did nothing to determine this and apparently didn't even bother to read the policy.

■ Rynearson contends that "It does not stretch the imagination to be-

lieve that the defendant [Rynearson] after viewing the 'coroner's certificate of death' might well have decided as a reasonable and prudent man to believe that no claim for damages would arise." Brief of Appellant at 21. We do not agree. First, Rynearson's policy clearly required the insured to give notice of any accident resulting in bodily injury, *irrespective of liability*. Thus Ohio Casualty was entitled to prompt notice, irrespective of whether or not Rynearson believed that a claim for damages would arise. See Hartford Accident and Indemnity Co. v. Loyd, 173 F.Supp. 7, 11 (W.D.Ark.1959).

Second, although the general rule is that an insured will be excused where, acting as a reasonably prudent person, he believed that he was not liable for the accident, Hartford Accident & Indem. Co. v. Lochmandy Buick Sales, 302 F.2d 565, 566 (7th Cir. 1962), differing fact situations produce different results under the general rule. In *Lochmandy,* defendant's president, Lochmandy, was asked to provide automobiles for a parade. He declined, stating that he would furnish his own car but could not agree to furnish other cars because his salesmen owned their own cars and could not be directed by him to use them outside of their business as salesmen. Several of his salesmen, however, including one Miller—a part-time and non-salaried salesman—volunteered to enter their cars. Miller drove his car with a sign on the side, furnished by another salesman, reading: "Welcome Legionnaires—Ernest Miller—Lochmandy Buick Sales, Inc." During the parade, held on June 23, 1956, Miller's car ran into one Ruklic and broke his leg. Three days later, Lochmandy learned of the occurrence from Miller, and was advised that the matter had been turned over to Miller's insurer. Lochmandy's next notice of the matter was by a letter of April 30, 1958 from Ruklic's attorney, of intention to sue. Lochmandy sent this letter to his insurer's agent. Ruklic sued the defendant as Miller's principal. The insurance company rejected defendant's request to defend the suit, stating that the defendant had violated its policy by failing to give timely notice of the occurrence. It was stipulated that Lochmandy "was of the opinion that there was no need to notify his insurance company because he was in no way involved, Mr. Miller was not acting as agent for . . . Buick [defendant] and furthermore, Mr. Miller carried his own liability insurance . . . ." Lochmandy knew of the occurrence a few days after it happened, but gave no notice to his insurer, whose first notice was when Lochmandy forwarded the summons nearly two years later. On these facts the District Court concluded as a matter of law that the defendant did not notify the plaintiff "as soon as practicable after the accident," as required by the policy; that there was no valid excuse for his failure to do so; and that the plaintiff was not bound to defend defendant. We agreed, saying:

> Here Lochmandy made the decisions for Buick [defendant] that it was not liable because Miller was not its agent, and that the notice requirement of Buick's policy was unnecessary. We think the trial court could decide as a matter of law, on the undisputed facts, that Lochmandy, had there been no insurance, would not have made the decisions for Buick, in the same way, *and surely not without a much more thorough investigation; that in making the decisions he did not act as a reasonably prudent person;* and that plaintiff was under no duty to defend Buick or pay any judgment obtained by Ruklic against it. *We find no error in the court's decision.* [Emphasis added.]

302 F.2d at 567.

Because of his training and experience as a lawyer and former insurance company claim adjuster and claim supervisor, Rynearson possessed knowledge of insurance contracts far superior to that of the average insured. He became aware of Yoder's death within a day after it occurred, but made no inquiry into the facts surrounding the death. He had an opportunity to inspect his premises and to initiate an immediate investigation.

He did neither. Under these circumstances, he can hardly expect this court to decide that he acted as a reasonably prudent person in determining that no claim for damages would arise. Thus, under the authority of *Lochmandy* too, we must reject Rynearson's contention.

■ Rynearson relies heavily on Renuart-Bailey-Cheely Lumber & Supply Co. v. Phoenix of Hartford Ins. Co., 474 F.2d 555 (5th Cir. 1972), in support of his contention that his delay in notice was reasonable in view of the circumstances. We agree that whether a delay in notice is reasonable depends upon the circumstances in each case, but the circumstances in *Renuart* differ from those in the case at bar. In *Renuart,* the accident did not occur on the insured's premises; in the instant case, it did. In the case at bar, the term "occurrence" is clearly defined in the policy as an accident resulting in bodily injury which is neither expected nor intended, and there is no question that the "occurrence" resulted in bodily injury.

■ Rynearson strongly contends that Ohio Casualty, in order to prevail, must prove that it was substantially prejudiced by the late notice. We hold otherwise on the controlling authority of Hartford Accident & Indemnity Co. v. Lochmandy Buick Sales, *supra,* where we held that where the notice is unreasonably late, there is a presumption of prejudice as a matter of law. Prompt notice of an accident is of great importance in preparing a defense while the facts may be more readily and accurately ascertainable. The fact that Ohio Casualty was precluded from making a prompt investigation into the electrocution and death of Yoder at a time when the facts were readily and accurately available, and fresh in the minds of witnesses, demonstrably raises the presumption that Ohio Casualty was prejudiced. Rynearson offered no evidence to rebut this presumption. To the contrary, his own testimony established that many physical changes were made in the drive-in restaurant after Yoder's death and prior to Rynearson's giving notice. We agree with Ohio

Casualty that it was not necessary for the District Court to include a finding of prejudice, for the reason that its finding of unreasonably late notice gave rise to a presumption of prejudice which Rynearson did not refute. Our conclusion in this respect is controlled by Hartford Accident & Indemnity Co. v. Lochmandy Buick Sales, *supra.* Our language in *Lochmandy* is particularly appropriate to the case at bar and bears repeating:

> We think that the District Court in the case at bar could justifiably conclude that the delay was "unreasonable in itself," gave rise to a presumption of prejudice, and that the presumption was not rebutted. *The refusal to include the no prejudice finding was not error.* [Emphasis added.] 302 F.2d at 567–568.

■ Rynearson contends that he should have been excused for his delay in giving notice of Yoder's death for the reason that Ohio Casualty's reservation of rights letter of March 29, 1971 indicated that there was a question as to whether coverage for the occurrence was afforded. We must reject this contention. The policy in question covers Rynearson as a "lessor". As shown in his sworn statement attached to his motion for summary judgment, Rynearson initially leased the restaurant to Chris W. Yoder and Sadie Yoder in October, 1964. Thereafter, Chris and Sadie Yoder relinquished possession of the premises. Some time prior to May 4, 1969, Rynearson and Chris Yoder agreed to resume their relationship of landlord and tenant, respectively; however, when Sadie Yoder, Administratrix, filed suit against Rynearson, it was not clear to Ohio Casualty whether the relationship between Rynearson and Chris Yoder was that of landlord and tenant, employer and employee, or otherwise.

In an affidavit filed Feb. 13, 1973, Donald Nutter, an adjuster for Ohio Casualty, stated that he called upon Rynearson during the week of March 22, 1971 in order to commence an investigation into the electrocution and death of Yo-

der; that he requested Rynearson to give a complete account of the contractual relationship between Yoder and Rynearson so that Ohio Casualty could determine whether the relationship was that of landlord-tenant or employer-employee, or otherwise; that Rynearson promised to gather all of his leases and records and to dictate a full memorandum of the relationship; that, despite repeated requests by Nutter, Rynearson never fully submitted the requested information until his sworn statement was taken by Ohio Casualty on January 20, 1972; that, because of Rynearson's failure to provide the information, it was questionable at the time Ohio Casualty served its reservation of rights letter of March 29, 1971 upon Rynearson, whether or not Rynearson had coverage for Yoder's death under the liability policy in question, or whether he would have to rely upon the coverage afforded by a workmen's compensation policy. Therefore Ohio Casualty properly stated in its reservation of rights letter that there was a question of coverage. Neither do we agree that the reservation of rights letter is ambiguous and therefore unenforceable. A reading of the letter indicates that the letter was drafted in language abundantly clear to advise Rynearson of Ohio Casualty's intention to reserve its rights to disclaim coverage due to delayed notice.

■ Rynearson contends that Ohio Casualty was guilty of waiver and estoppel by continuing to defend him until the District Court's decision was rendered. We must reject this contention for several reasons. First, Ohio Casualty served a reservation of rights letter upon Rynearson 10 days after its agent was notified of Yoder's death. Simultaneously, Ohio Casualty retained counsel to defend Rynearson against the Yoder lawsuit. By this procedure, Ohio Casualty not only reserved its right to deny coverage due to the 22-month delay in notice, but it also protected Rynearson from a default judgment. Ohio Casualty continued Rynearson's defense until the District Court ruled that the policy afforded no coverage to defend Rynearson for Yoder's death.

■ Second, it is recognized in Indiana that an insurer can protect itself from waiver and estoppel by defending an insured under a non-waiver agreement. London Guarantee & Accident Co. v. Siwy, 35 Ind.App. 340, 347–348, 66 N.E. 481, 483 (1903). This court, too, has upheld the creation of a reservation of rights letter from the insurer to the insured. Canadian Universal Ins. Co. v. Northwest Hospital, Inc., 389 F.2d 559, 561 (7th Cir. 1968). By letter of March 29, 1971, Ohio Casualty advised Rynearson that it would undertake his defense against the Yoder lawsuit, but that it specifically reserved its right to disclaim coverage because of Rynearson's late notice. Rynearson makes no showing that he protested this reservation of rights; thus by his silence he is deemed to have accepted the terms of the letter. Zauderer v. Continental Cas. Co., 140 F.2d 211, 214 (2d Cir. 1944). Furthermore, Ohio Casualty reiterated its reservation of rights in the preamble to Rynearson's sworn statement taken on January 20, 1972 and filed as Exhibit C to Ohio Casualty's motion for summary judgment.

■ Finally, Rynearson had the burden of proving waiver or estoppel, Home Indemnity Co. of New York v. Allen, 190 F.2d 490, 491 (7th Cir. 1951), but failed to offer any evidence thereof. Thus the District Court was required as a matter of law to reject this defense.

### The Third-Party Complaint

■ Ohio Casualty's action for declaratory judgment proceeded against Rynearson on the sole ground that Rynearson failed to give notice of Yoder's electrocution until March 19, 1971. Ohio Casualty did not contend that coverage for Yoder's death was not otherwise afforded, and a reading of the policy indicates that such coverage was indeed otherwise afforded. Rynearson's third-party complaint against Porter and Boston is in four counts, each count charging— either on a negligence theory or on a

breach-of-contract theory—that Porter and Boston breached its duty to advise him that he had coverage for the Yoder claim. The law does not impose such duty upon an insurance agent.

It is fundamental that an insured has a duty to learn the contents of the policy himself, even though it becomes necessary to have some third person read the contents to him. 1 Appleman, Insurance Law and Practice § 1, pp. 9–10 (1965 ed.); United Pac. Ins. Co. v. Northwestern Nat. Ins. Co., 185 F.2d 443, 447 (10th Cir. 1950); New York Life Ins. Co. v. McMaster, 87 F. 63, 67 (8th Cir. 1898), cert. denied, 171 U.S. 687, 18 S.Ct. 944; Warren v. Confederation Life Ass'n, 401 F.2d 487, 490 (1st Cir. 1968). Indiana law is in accord. Union Assurance Society, Ltd. v. Reneer, 86 Ind.App. 240, 244, 156 N.E. 833, 834 (1927); Metropolitan Life Ins. Co. v. Alterovitz, 214 Ind. 186, 198, 203, 14 N.E.2d 570 (1938).

 Rynearson does not dispute the foregoing rule of law but seeks to avoid its application on two grounds: first, the design of the policy failed to apprise him that coverage was afforded; second, Porter and Boston failed to disclose that it was acting as Ohio Casualty's agent.

The design argument is founded on the fact that as of June 16, 1969, Rynearson had four policies of insurance with Ohio Casualty which had been procured through Porter and Boston. Rynearson states that the policy in question covered the drive-in restaurant "by a mere endorsement inserted in the middle of a policy ostensibly issued to cover the defendant's [Rynearson's] business 'Hamilton Shores'." Brief of Appellant at 12. Rynearson asserts:

. . . it should be noted that the Ohio Casualty Insurance Company had issued the defendant three (3) different policies of insurance and nowhere in any of these policies was the name "California Drive In" mentioned. A fourth policy of insurance was issued by plaintiff [Ohio Casualty] to the defendant on June 16, 1969, a matter of about forty-four (44) days subsequent to the electrocution of Chris Yoder.

This policy did specifically mention the "California Drive In" but was for material damage coverage only.

Brief of Appellant at 16.

Rynearson further asserts:

. . . It is submitted that it was difficult for the defendant and any attorney to understand this oblique procedure. It is further submitted that this procedure . . . is inherently deceptive and amounts to negligence in giving the defendant fair and adequate notice of the entire extent of his insurance coverages.

Brief of Appellant at 12.

Rynearson contends that it is a question for the jury to decide whether under the foregoing circumstances Porter and Boston had a duty to advise Rynearson of its "oblique procedure"; if so, whether this duty was breached; and whether any damages were proximately caused by the conduct of Porter and Boston.

There are several answers to the design argument. First, there are five Ohio Casualty policies in the record. The first policy is the liability policy for the period June 28, 1968 to June 28, 1969. The second policy is a fire insurance policy for the period Feb. 13, 1970 to Feb. 13, 1973. The third policy is a fire insurance policy for the period Feb. 13, 1967 to Feb. 13, 1970. The fourth policy is a scheduled property floater policy for the period Feb. 13, 1967 to Feb. 13, 1970. The fifth policy is a scheduled property floater policy for the period Feb. 13, 1970 to Feb. 13, 1973. Rynearson's brief refers to two additional policies, neither of which is in the record; the first is described as policy No. OCF 309 52 62 issued to Max D. Rynearson d/b/a California Drive In (Brief of Appellant at 8), and the second is described as a material damage policy issued June 16, 1969 on the California Drive In (Brief of Appellant at 12). Of these seven policies, the only policies in effect on May 4, 1969, the date of Yoder's electrocution, were the first (the liability policy in question), the third (fire insurance), and fourth (scheduled property floater).

Neither the third nor the fourth policy afforded any wrongful death liability coverage. The result is that only the first policy could possibly have afforded Rynearson coverage for the Yoder claim. Therefore it was the only policy which he needed to read.

Second, Rynearson states that at the time of the electrocution, he owned not only the drive-in restaurant just outside Goshen, where Yoder was electrocuted, but also a mobile home park in Hamilton, Indiana. Brief of Appellant at 8. He further states that the policy in question "listed only the geographical location of the 'California Drive In' on an endorsement and then not in a very clear manner." Brief of Appellant at 10. The policy as a whole affords coverage not only for the restaurant outside Goshen, but also for hired and non-owned automobiles located at Indianapolis, Indiana, and for premises located at Hamilton, Indiana. Thus three geographical locations—not just one—are covered in the policy.

Third, the fact that the drive-in restaurant premises are afforded coverage in the middle of the policy in question is of no help to Rynearson. The premises are described near the top of the page in typewritten words larger than the words in the printed parts of the policy. Moreover, as indicated above, this was the only Ohio Casualty policy which afforded Rynearson any wrongful death liability coverage at the time of Yoder's electrocution.

 As for Rynearson's argument that Porter and Boston failed to disclose that it was acting as Ohio Casualty's agent, we need only point out that Rynearson's amended third-party complaint does not contain any contention that Porter and Boston failed to disclose that it was acting as agent for Ohio Casualty. The principle that new issues or new bases for liability may not be raised for the first time on appeal is too well known to require citation.

For all of the foregoing reasons, the decision of the District Court is affirmed.