520 F.2d 737
 William LORANCE, Plaintiff,
v.
MARION POWER SHOVEL COMPANY, INC., a corporation, Defendant.
MARION POWER SHOVEL COMPANY, INC., a corporation,
Third-Party Plaintiff-Appellant,
v.
AMERICAN SMELTING AND REFINING CO., a corporation,
Third-Party Defendant-Appellee.
 No. 74-1824.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 14, 1975.
Decided July 10, 1975.
 
 Frank Glazer, Harvey A. Cohan, Chicago, Ill., for Marion Power Shovel co.
 Tom L. Yates, Chicago, Ill., for American Smelting and Refining.
 Before CASTLE, Senior Circuit Judge, and STEVENS and SPRECHER, Circuit Judges.
 CASTLE, Senior Circuit Judge.
 
 
 1
 Plaintiff William Lorance was injured while working on the repair of a Model 5760 strip-mining shovel. Lorance filed a complaint in the district court below seeking $300,000 in damages, and alleging that his injury was caused by the negligence of the defendant, Marion Power Shovel Company, Inc. Jurisdiction was based on diversity of citizenship. In turn, Marion Power filed a third-party complaint against American Smelting and Refining Company, plaintiff's employer.[1] The complaint stated that in the event Marion Power was found liable to the plaintiff, its negligence was passive only, and that therefore it was entitled to be indemnified by American Smelting, who was alleged to be actively negligent in causing the plaintiff's injury.
 
 
 2
 The case was tried before a jury, with the issue of damages reserved. At the close of all the evidence, the trial court denied Marion Power's claim for indemnity by directing a verdict on the third-party complaint against Marion Power and in favor of American Smelting. The jury then found Marion Power liable to plaintiff Lorance. Marion Power appeals only from the entry of the directed verdict against it on its third-party complaint seeking indemnity. We affirm.
 
 I.
 
 3
 In diversity cases we are governed by state law, and this court also applies the state standard in determining the propriety of directed verdicts. Illinois State Trust Co. v. Terminal Railroad Association of St. Louis, 440 F.2d 497, 500 (7th Cir.), cert. denied 404 U.S. 855, 92 S.Ct. 100, 30 L.Ed.2d 96 (1971). Under the Illinois standard set forth in Pedrick v. Peoria & E.R.R., 37 Ill.2d 494, 510, 229 N.E.2d 504, 513-514 (1967), the district court's directed verdict can be upheld only if "all the evidence, when viewed in its aspect most favorable to . . . (Marion Power), so overwhelmingly favors (American Smelting) that no contrary verdict based on that evidence could ever stand." We first set out the evidence in accordance with that standard.
 
 
 4
 The Model 5760 strip-mining shovel is a mammoth machine designed and manufactured by Marion Power Shovel Company for the purpose of unearthing deposits of coal by removing the covering layers of soil. The total weight of the shovel is approximately six million pounds, and its bucket can remove seventy cubic yards of earth in one gulp. The entire machine is mobile and moves along the surface on caterpillar tracks. The upper portion of the machine, to which the bucket is attached by a dipper stick, rests on a series of rails and rollers which permit the bucket and upper structure of the shovel to swing in a 360o circle. This upper section weighs 3,600,000 pounds. Wear and tear occurs because of the pivoting of the upper structure, and therefore, it is necessary approximately every eight years to replace the rails and rollers. This replacement is known as a complete rail and roller change-out. The 5760 shovel located at the Mecco Mine of the Midland Coal Company, a division of American Smelting and Refining Company, needed such repairs.
 
 
 5
 Because no employee of American Smelting at the Mecco Mine had experience in a complete rail and roller change-out, Marion Power was contacted for assistance. Gerald Updyke, a service representative from Marion Power, visited the Mine in May, 1972 in order to determine the extent and nature of the repairs to be done. Two methods of accomplishing the change-out were discussed by Updyke with Dale Teeters, mine superintendent. The first method involved lifting the upper structure of the machine off the lower rails and rollers. The front of the upper structure would be supported by the bucket and dipper stick, and the rear by steel columns, the columns also necessary for safety. The second method suggested by Updyke did not require separating the upper structure of the shovel from the lower frame. This method involved removing the rails and rollers one at a time by swinging the upper structure. During Updyke's visit to the Mine, no decision was made as to the method to employ.
 
 
 6
 The actual change-out operation began on July 8. The personnel selected to work on the change-out were all employees of the Mine and were under the supervision of Robert Hartstirn, master mechanic for American Smelting at the Mecco Mine. Since Updyke was unavailable, Dick Roberts was sent in his place by Marion Power as an expert to supervise the rail and roller change-out. Apparently the necessary materials to support the upper frame had not been procured and were not at the Mine. In light of this fact, Roberts directed that the second method discussed by Updyke, which did not require separation of the frames, be employed.
 
 
 7
 On July 9, problems were encountered in attempting to replace the rails and rollers by swinging the machine. After discussing alternative procedures with American Smelting supervisors, Roberts selected another method to accomplish the change-out. This method involved raising the front end of the upper structure by placing the bucket on the ground directly in front of the machine and applying downward force through the dipper stick and onto the bucket. When this method was employed to lift the upper structure, no other materials to support the upper structure were utilized.
 
 
 8
 While the upper structure was being raised in this manner, Hartstirn and plaintiff Lorance attempted to put in place a new roller. Hartstirn, without direction from Roberts, told Lorance to grab a pry bar and pry up the roller. As Lorance was doing this, the upper portion of the structure slipped down, shooting the pry bar outward and injuring Lorance. Prior to this occurrence, the upper structure had slipped down at least twice.
 
 
 9
 Throughout the course of repairs, Roberts was present at the shovel. He gave orders to various employees of American Smelting, and gave general instructions to Hartstirn, although the specifics of executing those instructions were often filled in by Hartstirn independently. The evidence also shows that mine superintendent Teeters had the authority to stop the repair job, and that American Smelting did not conduct any safety meetings for its employees with respect to the change-out procedure.
 
 II.
 
 10
 As set forth in Carver v. Grossman, 55 Ill.2d 507, 305 N.E.2d 161 (1973), Illinois has permitted indemnification in order to offset the harsh effect that would result from the application of its inflexible rule prohibiting contribution among joint tortfeasors. Indemnification has therefore been allowed where the conduct of the party seeking indemnification has been characterized as the secondary cause of harm to the plaintiff, or passive negligence. Conversely, indemnification has not been permitted where the conduct of the party seeking it has been characterized as a primary cause of harm to the plaintiff, or active negligence. Id. at 511, 305 N.E.2d at 163. Because the theory of indemnity in Illinois permits the shifting of the entire burden of damages from one party to another, "the facts of the case must clearly justify indemnification." Id. at 512, 305 N.E.2d at 163; Moody v. Chicago Transit Authority, 17 Ill.App.3d 113, 116, 307 N.E.2d 789, 792 (1974). Consequently, the court's conclusion in Carver v. Grossman that Grossman, as administrator of Putnam's estate, was not entitled to indemnification from third-party defendant Bishop for a consent judgment which plaintiff Carver obtained from that estate, rested on the following reasoning:
 
 
 11
 (I)t cannot be said that Putnam's breach of his duty to the plaintiff was so minor or insignificant as to permit a total shifting of the responsibility for Carver's injury from him to Bishop. . . . We cannot characterize this negligence (Putnam's) as passive so as to permit the shifting of the entire responsibility from him to Bishop for injuries to which he very substantially contributed. It cannot be said that the principal or moving cause of the injury was the act of Bishop and that Putnam simply failed to discover or correct the situation which Bishop had created. Nor can Bishop be said to be the "principal wrongdoer" or the one whose wrong has been principally responsible for the injury. . . .
 
 
 12
 . . . If Putnam was guilty of active negligence, he is not entitled to indemnity whether Bishop's negligence is termed active or passive.
 
 
 13
 Id. 55 Ill.2d at 512-514, 305 N.E.2d at 163-164.
 
 
 14
 Illinois courts have noted that what constitutes active negligence depends on the facts of each case. E. g., Moody, supra, 17 Ill.App.3d at 117, 307 N.E.2d at 793. In various circumstances those courts have denied indemnity where the conduct of the party seeking it consisted of failure to warn, to maintain an area in a safe condition, to select proper building materials, and to fully disclose.[2] We do not think, therefore, that analysis is advanced by categorizing types of conduct as always active or always passive. Rather, we believe that under Carver v. Grossman the proper focus is on whether the conduct of the party seeking indemnification significantly contributed to the harm caused so as not to warrant shifting the entire burden of damages, and therefore is active negligence prohibiting indemnification.
 
 
 15
 Accordingly, in light of the evidence discussed above, the district court properly directed a verdict in favor of American Smelting because a contrary conclusion that Marion Power was not actively negligent could never stand. Roberts was an expert from Marion Power who was relied on to direct and supervise the complete rail and roller change-out. He was present during the repairs, gave orders, and decided to employ a change-out method which separated the upper frame from the lower without also utilizing additional support. The actions of Marion Power convinced the jury that it failed to properly prepare and accomplish the change-out and therefore was liable to the plaintiff.[3] Assuming arguendo that American Smelting was in some respects negligent by directing Lorance to use the pry bar and by failing to conduct safety meetings,[4] it cannot be concluded that the conduct which resulted in Marion Power's liability played a minor part, or that the conduct of American Smelting was the primary factor, in causing Lorance's injury.
 
 
 16
 The defendant places special emphasis on Lindner v. Kelso Burnett Electric Co., 133 Ill.App.2d 305, 273 N.E.2d 196 (1971), O'Leary v. Siegel, 120 Ill.App.2d 12, 256 N.E.2d 127 (1970), and Sack v. Arcole Midwest Corp., 33 Ill.App.2d 344, 179 N.E.2d 441 (1961), but the facts of those cases are distinguishable from this situation. In those cases the plaintiffs were injured in scaffolding accidents, and the damage burden was finally placed on the party who had maintained and erected the scaffolding, and not on the party who had allegedly failed to discover the unsafe conditions. Marion Power, however, participated in a far greater degree in the events leading to Lorance's injury than only failing to recognize and correct a dangerous condition created by another. Here, Marion Power in effect selected and created the unsafe situation. Thus, Marion Power played a very significant role in causing Lorance's injury, and shifting the entire burden of damages is not warranted. Accordingly, Marion Power can only be found to be actively negligent, and therefore is not entitled to indemnification.
 
 The judgment of the district court is
 
 17
 Affirmed.
 
 
 
 [1]
 The record does not reveal the citizenship of American Smelting. Plaintiff Lorance, however, did not assert any claim against American Smelting in the district court, and American Smelting asserted no claim against the plaintiff. In these circumstances, the third-party proceeding is considered ancillary to the main claim and no independent jurisdictional ground is required. 3 Moore's Federal Practice P 14.26 (2d ed. 1974); see Illinois v. Maryland Casualty Co., 132 F.2d 850, 853 (7th Cir. 1942) (Judge Minton concurring). Ascertainment of the citizenship of American Smelting is therefore unnecessary
 
 
 [2]
 Harris v. Algonquin Ready Mix, Inc., 59 Ill.2d 445, 449, 322 N.E.2d 58, 61 (1974); Warzynski v. Village of Dolton, 23 Ill.App.3d 50, 63, 317 N.E.2d 694, 703 (1974); St. Joseph Hospital v. Corbetta Construction Co., 21 Ill.App.3d 925, 959-960, 316 N.E.2d 51, 75-76 (1974)
 
 
 [3]
 The case was submitted to the jury on the following instructions:
 The plaintiff claims that he was injured and sustained damage while exercising ordinary care and that the defendant, Marion Power Shovel Company was negligent in one or more of the following respects:
 Failed to adequately and properly direct or supervise the complete rail and roller change-out on the Model 5760 power shovel manufactured by Marion Power Shovel Company;
 Failed to adequately and properly plan the complete rail and roller change-out on the said power shovel;
 Failed to provide adequately trained personnel to direct and supervise the complete rail and roller change-out for the said power shovel;
 The plaintiff further claims that one or more of the foregoing was the proximate cause of his injury.
 There was evidence before the jury that the upper structure was not designed to be lifted by applying downward pressure on the bucket and that such a load should not be lifted without using supplemental materials for support.
 
 
 [4]
 The defendant argues that certain statements by the trial court indicate that it was of the opinion that the facts show that American Smelting was actively negligent. Marion Power further contends that American Smelting violated safety regulations of the Mining Enforcement and Safety Administration, 30 C.F.R. §§ 77.1708 & 77.1709, and that this also establishes the active negligence of American Smelting. However, as the quotation from Carver v. Grossman points out, see page 740 supra, if Marion Power is actively negligent, then it is not entitled to be indemnified whether American Smelting's negligence is deemed active or passive
 Additionally, contrary to Marion Power's contention, violation of the regulations does not by itself define the roles the conduct of each party played in causing the injury. Assuming a violation, it is only a factor to be considered in assessing the character of the conduct.