The CHESAPEAKE AND OHIO RAIL-
WAY COMPANY, Plaintiff-Appellant,

v.

ILLINOIS CENTRAL GULF RAILROAD
COMPANY, Defendant-Appellee.

No. 76–1831.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 16, 1977.

Decided Oct. 20, 1977.

Rehearing Denied Nov. 9, 1977.

James R. Gannon, Chicago, Ill., for plaintiff-appellant.

Francis D. Morrissey, Thomas J. Healey, Chicago, Ill., for defendant-appellee.

Before SWYGERT, CUMMINGS and BAUER, Circuit Judges.

BAUER, Circuit Judge.

In this diversity action, the Chesapeake and Ohio Railroad (C & O) seeks indemnity from the Illinois Central Gulf Railroad (ICG) for a judgment paid by the C & O to an ICG employee, plus costs and attorney's fees incurred in defending the suit brought by the ICG employee against both parties to this action. The district court granted the ICG's motion for summary judgment on the ground that the governing Illinois law did not permit an "actively" negligent tortfeasor to obtain indemnity from a joint tortfeasor, even if the latter's negligence

was also "active." As the jury verdict rendered against the C & O in the prior suit brought by the ICG employee conclusively established that the C & O's negligence had been "active" rather than "passive" in character, the district court ruled that the ICG was entitled to summary judgment as a matter of law. The C & O appeals on the ground that (1) a genuine issue of material fact exists as to whether its negligence as a joint tortfeasor was "active" or "passive"; and (2) that, in any event, it is entitled to indemnity from the ICG on the theory that the defendant was a joint master of the common servant whose negligence was the proximate cause of the injury suffered by the ICG employee. We affirm the district court's judgment for the reasons noted below.

## I.

In September 1972, James Stacy, an ICG employee, was injured when the train in which he was riding was suddenly braked by the engineer to avoid crossing a switch and colliding with a C & O engine that was picking up ICG trains for the C & O on a parallel track. Stacy sued both railroads on the theory that either one or both of them were liable for his injuries because of the negligence of their employees. The ICG settled with Stacy prior to trial. The C & O defended the action and lost. Then it brought this indemnity action against the ICG for the amount of the judgment awarded Stacy, and the costs and attorney's fees incurred in defending the suit.

The C & O contends that, because it was liable to Stacy only on a theory of respondeat superior, its negligence must be characterized as "passive" rather than "active" for purposes of this indemnity action between joint tortfeasors. Its complaint alleges that the ICG owned, operated and controlled the tracks involved in the Stacy case, and that the ICG had the right to control the activities of the C & O employees that caused Stacy's injuries. According to the C & O, the ICG and its employees were primarily responsible for Stacy's injuries because the ICG control tower failed to alert the train

on which Stacy was riding about the presence of the C & O's crew and failed to direct the C & O employees working on the ICG tracks to close the cross-over switch. Relative to the primary or "active" negligence of the ICG and its employees, says the C & O, its own and its employees' negligence was secondary or "passive" in character. Therefore, the ICG should indemnify plaintiff for the judgment it paid to Stacy. Alternatively, the C & O contends that it is entitled to indemnity from the ICG on the theory that the C & O employee whose failure to close the cross-over switch caused Stacy's injury was a "common" servant of the two railroads, as the ICG had the right to control the C & O employee's activities while he was working on the ICG tracks.

## II.

■ The parties agree that, under settled Illinois law, indemnity actions between joint tortfeasors are permitted only when the negligence of one is "active" and the other's "passive." E. g., Carver v. Grossman, 55 Ill.2d 507, 514, 305 N.E.2d 161, 163 (1973). They disagree, however, about what constitutes "active" negligence. The C & O contends that the process of determining whether its negligence was "active" necessarily involves a weighing of the relative blameworthiness of the tortfeasors—a process that we cannot undertake without first determining certain material issues of fact raised by the pleadings concerning whose responsibility it was to control the cross-over switch that was the cause of Stacy's accident. E. g., Sargent v. Interstate Bakeries, Inc., 86 Ill.App.2d 187, 191, 198, 229 N.E.2d 769, 774–75 (1st Dist. 1967). The ICG, on the other hand, argues that the relative fault of the joint tortfeasors for the accident is beside the point, as any breach of a duty of due care constitutes "active" negligence under Illinois law. Chicago & Illinois Ry. v. Evans Constr. Co., 32 Ill.2d 600, 604, 208 N.E.2d 573, 575–76 (1965). The ICG claims that the Stacy judgment collaterally estops the C & O from denying that it breached a duty of due care. E. g., Shell Oil v. Foster-Wheeler Corp., 209 F.

Supp. 931, 940 (1962), aff'd, 320 F.2d 591 (7th Cir. 1963). Accordingly, as the C & O was "actively" negligent, it cannot obtain indemnity from the ICG, irrespective of the "active" or "passive" character of its own negligence or the relative fault of the parties.

■ We must confess at the outset that the line between "active" or "passive" negligence is often a blurred and indistinct one. What constitutes "active" negligence barring the indemnification of a joint tortfeasor often depends on the facts of each case, as the Illinois courts have acknowledged. E. g., Moody v. Chicago Transit Authority, 17 Ill.App.3d 113, 117, 307 N.E.2d 789, 793 (1974). Fortunately, however, prior precedent of this Court is available to guide our inquiry. In Shapiro v. Gulf M & O R.R., 256 F.2d 193 (7th Cir. 1958), for example, we held that, under Illinois law, "the degrees of negligence of the two wrongdoers could not be apportioned or measured for purposes of requiring indemnity" between joint tortfeasors where the negligence of the plaintiff-indemnitee was active or affirmative in character. Id. at 93. Though the relative culpability of the tortfeasors is irrelevant if the plaintiff's negligence was "active," we note that the "active" character of an indemnitee's negligence may sometimes depend whether it is deemed a primary or a secondary cause of the damages for which indemnity is sought. See Carver v. Grossman, 55 Ill.2d 507, 514, 305 N.E.2d 161, 163 (1973). This is not to say, however, that the indemnitee's negligence is deemed "passive" simply because the negligence of the indemnitor was a relatively greater cause of the injury. Rather, an indemnitee's negligence will be deemed "active" in character if it was a substantial cause of the injury, even though it may not have been the primary cause relative to the indemnitor's negligence. As we recently stated in Lorance v. Marion Power Shovel Co., 520 F.2d 737, 739 (7th Cir. 1975), the touchstone for determining whether an indemnitee's negligence was "active" in character under Illinois law is whether his conduct "significantly contrib-

uted to the harm caused so as not to war-- rant shifting the entire burden of damages" to the indemnitor. Thus, if the C & O's negligence was a substantial cause of Stacy's injuries, it cannot recover the damages it paid him from the ICG, as a joint tortfeasor, for the C & O's "active" negligence would bar recovery regardless of the relative fault of the ICG. *Carver v. Grossman, supra* at 514, 305 N.E.2d at 163.

█ With the above principles in mind, we turn to the question of whether the C & O's negligence significantly contributed to Stacy's injury. We find ourselves in agreement with the district court that the judgment Stacy recovered against the C & O conclusively established that the conduct of the C & O employees was a substantial cause of his injuries, for even a cursory review of the pleadings and the instructions read to the Stacy jury reveals that, in rendering a verdict for Stacy, the jury necessarily determined that the employees of the C & O were negligent in either misaligning or failing to realign the cross-over switch, and that their negligence was a proximate cause of his injuries. As the Stacy judgment rests on findings of fact that are fatal to the C & O's case here, the C & O is estopped by the judgment from denying that the negligence of its employees substantially contributed to Stacy's injury. *Shell Oil Co. v. Foster-Wheeler Corp., supra* at 940. The Stacy judgment thus establishes, as a matter of law, that the negligence of the C & O's employees was "active" in character, and nothing that the C & O could prove at trial regarding the relative responsibility of the ICG for Stacy's injuries could enhance the merits of its claim.

Notwithstanding the above, the C & O argues that, even if the Stacy judgment conclusively established the "active" negligence of its employees, it leaves open the question of whether the C & O's "own" negligence was "active" or "passive". As the C & O was liable to Stacy solely on a theory of respondeat superior, rather than on the basis of its own negligence, the C & O contends that a trial is still required to determine whether its "technical" responsi-

bility for Stacy's injuries approaches the primary or "active" negligence of the ICG whose control tower was principally responsible for the accident because of its failure to warn the ICG train of the presence of the C & O's crew and to direct the C & O employees to realign the cross-over switch on the ICG tracks. Relative to this primary or "active" negligence of the ICG, says the C & O, its technical responsibility for the accident was "passive" or secondary in character.

█ The short answer to this argument is that Illinois law imputes the negligence of the C & O's employees to the C & O, and we see no reason for not giving effect to this imputation in a subsequent indemnity action brought against a joint tortfeasor other than the negligent employees themselves. Thus, if the Stacy judgment conclusively settles the "active" character of the C & O employees' negligence, it likewise settles the character of the C & O's responsibility for the accident for purposes of this action. Moreover, even if we were to hold the imputation of an employee's negligence to his employer in actions brought by third parties does not carry over into the employer's subsequent action against a joint tortfeasor for indemnity, the C & O would still be unable to recover against the ICG. The flaw in the C & O's argument is that the ICG itself is likewise responsible for the negligence of its employees solely on a theory of respondeat superior. Accordingly, if the C & O's own negligence must be deemed "passive" in character because it results from a technical imputation of fault, so likewise must the ICG's imputed negligence be deemed "passive" in character. Such a result would bar the C & O's recovery, for indemnity between joint tortfeasors is permitted under Illinois law only when the negligence of the indemnitee was "passive" and that of the indemnitor "active." We are aware of no Illinois decision permitting indemnification between two "passively" negligent tortfeasors, and we are not persuaded that the Illinois courts would recognize such a novel exception to the general bar against indemnifica-

tion of joint tortfeasors embedded in their case law, for the theory underlying the few exceptions to the general rule recognized by the Illinois courts is the equitable necessity

"to do justice within the law so that one guilty of an act of negligence—affirmative, active, primary in its character—will not escape scot-free, leaving another whose fault was only technical or passive to assume complete liability." *Spivack v. Hara*, 69 Ill.App.2d 22, 24, 216 N.E.2d 173, 174 (1st Dist. 1966).

That rationale does not apply as between two actively negligent tortfeasors irrespective of their relative culpability, *Carver v. Grossman, supra* at 514, 305 N.E.2d at 163, and we are not persuaded that any Illinois court would hold it applicable in a suit for indemnification between two passively negligent tortfeasors, irrespective of the *relative* culpability of the employees whose active negligence made the parties liable on a theory of respondeat superior.

Accordingly, as the judgment entered in the Stacy case estops the C & O from denying that its own negligence was "active," the district court correctly ruled that C & O cannot maintain this indemnity action against the ICG and properly granted summary judgment against the C & O, for none of the issues of fact raised by the C & O's pleadings are material to the resolution of this case in view of the conclusive effect of the Stacy judgment.

### III.

Having disposed of the C & O's claim that the ICG is liable to it as an "actively" negligent joint tortfeasor whose conduct was the principal cause of Stacy's injury, we turn to the question of whether the C & O is entitled to indemnity on the theory that the ICG, which allegedly had the right to control the activities of the negligent C & O employees, was a joint master of a common servant. Because there is no Illinois case law recognizing such a theory of recovery, the C & O refers us to the Restatement (Second) of Agency § 317(A)(2), which provides:

"(2) If the negligence or fraud of two servants or other agents of different principals unites in causing injury to a third person, one of the principals is entitled to indemnity or contribution for the injury, in accordance with the rules stated in the Restatement of Restitution."

According to the C & O, it has stated, under the Restatement rule, a viable cause of action for contribution, if both it and the ICG were equally at fault for Stacy's injuries, or for indemnity, if the ICG was primarily at fault.

We note that, so far as our review of the record reveals, the C & O never presented this novel theory of liability to the district court as a ground for denying the ICG's motion for summary judgment. Nothing in the C & O's Memorandum in Opposition to the ICG's Motion for Summary Judgment, for example, speaks to the theory of liability espoused here on appeal. Ordinarily we will not decide issues raised on appeal that were not raised and argued below. E. g., *Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Corp.*, 508 F.2d 417, 420 (7th Cir. 1975). This is particularly true when an appellant asks us to reverse a district court decision on the basis of a new theory of liability not presented below. E. g., *Ohio Casualty Co. v. Rynearson*, 507 F.2d 573, 582 (7th Cir. 1974); see *Desert Palace, Inc. v. Salisbury*, 401 F.2d 320, 323–24 (7th Cir. 1968). Accordingly, as we are convinced that the C & O never raised its Restatement theory of liability in the district court, we decline to pass upon this question of first impression under Illinois law here.

The judgment of the district court is AFFIRMED.

SWYGERT, Circuit Judge, dissenting.

I agree with the majority that if the C & O's negligence was anything more than "passive," the C & O cannot recover in the indemnity action. *Carver v. Grossman*, 55 Ill.2d 507, 305 N.E.2d 161 (1973). The problem is whether the character of the C & O's negligence should have been resolved by summary judgment. The district court

ruled that all genuine issues of material fact had been decided in Stacy's suit against the C & O. This, in my judgment, was error.

The C & O's action is based on the following factual contentions. Prior to the time Stacy was injured while riding in the caboose of the Illinois Central train, the C & O train had received permission from the Illinois Central employees in control of the tracks to travel over tracks 7 and 8 for a switching movement. To accomplish this it was necessary for the C & O crew to use two cross-over switches. While completing the switching operation the crew placed the switches in a cross-over position. According to the Illinois Central's control tower procedures, the C & O crew could leave the switches in a cross-over position unless the tower directed that the switches be returned to a straight position. At the time in question, the C & O crew had not been directed to realign the switches and had not been informed of the Illinois Central train's movement in the critical area.

The C & O contends: (1) that the Illinois Central was in control of the activities of the C & O crew and had superior knowledge (on which the crew relied) of the activities of the trains involved; and (2) that although the C & O was held to be legally liable for Stacy's injuries under the doctrine of *respondeat superior*, the negligent acts and omissions of the Illinois Central's employees were the actual or "active" causes of the chain of events that resulted in those injuries.

Because the C & O was found liable to Stacy under the doctrine of *respondeat superior*, the relationship between the Illinois Central and the C & O with respect to the activities of the C & O train crew was not at issue nor was it decided in the Stacy action. This relationship and the responsibilities of the Illinois Central for the actions of the C & O crew are genuine issues of material fact which have yet to be resolved. Only an adversary trial can determine whether Illinois Central committed "active" negligence and the C & O only "passive" negligence.

The majority says:

We find ourselves in agreement with the district court that the judgment Stacy recovered against the C & O conclusively established that the conduct of the C & O employees was a substantial cause of his injuries, for even a cursory review of the pleadings and the instructions read to the Stacy jury reveals that, in rendering a verdict for Stacy, the jury necessarily determined that the employees of the C & O were negligent in either misaligning or failing to realign the cross-over switch, and that their negligence was a proximate cause of his injuries. As the Stacy judgment rests on findings of fact that are fatal to the C & O's case here, the C & O is estopped by the judgment from denying that the negligence of its employees substantially contributed to Stacy's injury. *Shell Oil Co. v. Foster-Wheeler Corp., supra* at 940. The Stacy judgment thus establishes, as a matter of law, that the negligence of the C & O's employees was "active" in character and nothing that the C & O could prove at trial regarding the relative responsibility of the ICG for Stacy's injuries could enhance the merits of its claim.

The flaw in this argument is that the relative negligence of the Illinois Central was not at issue in the Stacy action. How can the C & O be estopped by the Stacy judgment to assert that its negligence was merely passive and that Illinois Central's negligence was active? The answer seems obvious. Until the C & O has its day in court to attempt to prove that the Illinois Central employees were the sole active agents in the happening, the C & O's claim for indemnity should not be foreclosed.

I would reverse and remand for further proceedings in the district court.