C. E. FREET, Appellant, *vs.* THE AMERICAN ELECTRICAL, SUPPLY COMPANY, Appellee.

*Opinion filed February 20, 1913.*

1. CONTRACTS—*when question whether agent was authorized to make contracts is one of fact.* Where the defense to a suit for goods delivered under a contract is that the contract was violated by the vendor in allowing his representative, after appointing the vendee State agent for the goods, to make contracts in certain large cities of the State appointing other dealers agents for their locality, the question whether such representative made the contracts with the knowledge and authority of the vendor is one of fact for the jury, if there is any evidence tending to show such knowledge and authority.

2. SAME—*what tends to show that contracts by special representative were authorized.* The fact that a person acting as agent for a manufacturer was sent to Illinois with blank contracts for appointing agents and that a contract upon one of such blanks appointing a corporation State agent was admittedly authorized, tends to show that other contracts made by him upon such blanks with different dealers throughout the State were also authorized, where it is shown that the manufacturer knew that he was making such contracts.

3. SAME—*when a provision for buying goods is not severable from provision appointing vendee State agent.* Where the principal object of a contract is to appoint a corporation State agent for a manufacturer of fire extinguishers, a provision by which the corporation agrees to take and pay for a certain number of the extinguishers is not such a severable provision as binds the corporation to pay for the extinguishers notwithstanding there was a breach of the provisions concerning its appointment as State agent.

4. SAME—*what constitutes a breach of State agency contract.* Where a contract appoints a corporation State agent for a manu-

facturer of fire extinguishers, subsequent contracts, made with the knowledge of the manufacturer, with dealers in certain large cities of the State appointing them as agents in their respective localities, and requiring them, after their first order, to buy from the manufacturer and deal with him directly, constitute a breach of the State agency contract.

5. SAME—*when there is an implied agreement that the orders turned in shall be bona fide sales.* Where a manufacturer agrees, in his contract appointing a corporation his State agent, to canvass the State three times a year and turn in all orders to the corporation, to be filled from its stock, there is an implied agreement that the orders turned in shall be based upon *bona fide* sales, and there is a breach of such agreement where the manufacturer, with knowledge that the orders turned in by his representative were fraudulent, seeks to hold the corporation liable therefor.

6. EVIDENCE—*when admission by party to third person is admissible.* It is proper to prove a voluntary admission by a party to a suit against his interest, even though made to a person who is not a party to the suit.

7. PRACTICE—*Appellate Court's construction of contract is not binding upon the Supreme Court.* The question whether the construction given a written contract upon the first appeal to the Appellate Court is binding upon that court upon a second appeal need not be considered by the Supreme Court when reviewing the judgment upon the second appeal, as such construction is not, in any view, binding upon the Supreme Court.

APPEAL from the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. McKENZIE CLELAND, Judge, presiding.

HOYNE, O'CONNOR & IRWIN, (CARL J. APPELL, of counsel,) for appellant.

HARRY P. SIMONTON, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Appellant, C. E. Freet, brought suit in the municipal court of Chicago against appellee, the American Electrical Supply Company, to recover the contract price of fire extinguishers alleged to have been sold and delivered by ap-

pellant to appellee. A trial before a jury resulted in a verdict in favor of defendant, upon which the court rendered judgment against the plaintiff for costs. The plaintiff prosecuted an appeal to the Appellate Court for the First District. The cause was assigned to Branch "B" of that court and the judgment was there affirmed. A certificate of importance having been granted, appellant has prosecuted a further appeal to this court.

Appellant is, and was on March 19, 1907, engaged in the business of manufacturing fire extinguishers in New York City. He conducted this business under the trade name of the Fyricide Manufacturing Company. Appellee is, and was on said date, engaged in business in the city of Chicago. On said 19th day of March one George E. Weiler, who was in appellant's employ, called upon appellee at its place of business in Chicago and negotiated and concluded a contract between appellant and appellee, the material provisions of which are as follows: (1) Appellant engages appellee as general sales agent for the Fyricide extinguisher in the city and vicinity of Chicago and the entire State of Illinois for a period of twelve months, and agrees to pay appellee a salary of $125 per month, dating from payment by it for first shipment of extinguishers; (2) appellant agrees to canvass, at his expense, the territory aforesaid three times a year, and to turn over to appellee all orders on hand at the time of signing the contract and all orders received during the term of the contract within the territory above named, said orders to be filled from appellee's stock; (3) appellant agrees to sell and deliver $1000 worth of fire extinguishers, f. o. b. destination, terms net cash on delivery, and to furnish such additional stock of extinguishers as appellee's trade may require from time to time, without further expense to appellee; (4) at the expiration of the time and upon the fulfillment of the contract by appellee, appellant agrees to re-purchase from appellee all extinguishers which it has on

hand, at the same price paid therefor by appellee; (5) appellee engages with appellant as general sales agent for the term of one year, and agrees that it or its agents will devote a reasonable amount of time to the sale of Fyricide extinguishers; (6) appellee agrees to carry a stock of 800 extinguishers, of the value of $1000 cost price, terms net cash on delivery of the extinguishers; (7) appellee agrees that if the sales made by it during the first six months shall not average $450 per month, appellant shall have the right to cancel the contract and re-purchase the extinguishers from appellee at said cost price; (8) appellee is given the right and authority to collect for all sales made through said agency, and at the end of each month, after deducting therefrom $125 for salary and the difference between the billing price and selling price, to remit the balance to appellant, together with a report of the number of extinguishers sold. It is then provided that the appellant shall, upon receiving such report, replace the extinguishers sold and paid for by appellee without charge or expense, and if the sales shall not be sufficient to pay appellee's salary and the cost of replacing the extinguishers sold, the difference shall be made up by appellant.

Weiler executed the contract on behalf of the appellant, designating himself as "special representative" of the Fyricide Manufacturing Company. The contract was also duly executed by appellee. Appellee at the same time executed a written order, directed to the Fyricide Manufacturing Company, for 800 fire extinguishers, and delivered this order, together with the contract executed by it, to Weiler, who immediately forwarded them by mail to appellant. On the same day, and immediately after the contract was executed, Weiler requested and obtained from appellee the following letter, dated March 19, 1907, addressed to the Fyricide Manufacturing Company and signed by appellee: "We herewith give your Mr. Weiler authority to take orders for Fyricide extinguishers as per terms of contract

signed this date." William H. Gross, the treasurer of appellee, acted on behalf of appellee in making the contract. He testified that he signed the letter above mentioned at Weiler's request, and upon his representation that when he went out to solicit orders under the terms of the contract he wanted something to show that the orders were to be shipped through appellee, as appellee had by the contract been given the agency for the State of Illinois. Weiler immediately sent a copy of this letter to appellant. On the following day Weiler called upon the Hawthorne Hardware Company, of Elgin, and A. W. Wheelock, of Rockford, and on March 21 called upon C. E. Wheelock & Co., of Peoria, and obtained the execution of contracts by those parties. Each of these contracts purported, on its face, to be a contract with the Fyricide Manufacturing Company. All purport to be signed by the appellee, the American Electrical Supply Company, and by the Fyricide Manufacturing Company, Weiler executing them as special representative of the former company in one instance and as special representative of the latter company in the other two instances. The contracts were all identical in form and substance with the contract which had been made between appellant, acting through Weiler, and appellee, except in the following particulars: The contract with the Hawthorne Hardware Company limited its territory to the city and vicinity of Elgin, and provided that appellant should pay the hardware company a salary of $50 per month, and that the hardware company should purchase from appellant twelve dozen fire extinguishers, costing $242, the same to be billed and shipped by appellee, and appellant was given the right to cancel the contract at the expiration of six months in case the sales during that period should not average $200 per month. The contract with A. W. Wheelock limited his territory to the city and vicinity of Rockford, and in other respects was the same as the contract with the Hawthorne Hardware Company, except that Wheelock was to

purchase twenty dozen extinguishers, costing $420. The
contract with C. E. Wheelock & Co. limited their territory
to the city and vicinity of Peoria, and in other respects was
the same as the contract with A. W. Wheelock. Weiler
also obtained from A. W. Wheelock a signed order, di-
rected to appellee, for twenty dozen fire extinguishers at
$21 per dozen, and a like order from C. E. Wheelock & Co.
for the same number of fire extinguishers at the same price.
These orders, on their face, were unconditional. Immedi-
ately after obtaining the execution of these contracts and
orders Weiler returned to Chicago, and, without inform-
ing appellee of the contracts which he had made at Elgin,
Rockford and Peoria, turned over to appellee the written
orders from A. W. Wheelock and C. E. Wheelock & Co.,
and gave appellee a verbal order from the Hawthorne Hard-
ware Company for twelve dozen fire extinguishers. Rely-
ing upon these orders turned over to it by Weiler, appellee,
on March 22, 1907, ordered from appellant fifty-two dozen
fire extinguishers, and requested appellant to send them di-
rect to A. W. Wheelock, C. E. Wheelock & Co. and the
Hawthorne Hardware Company, designating the number to
be sent to each. Appellant, on March 25, 1907, shipped
800 fire extinguishers to appellee upon its original order,
and on the following day shipped the fire extinguishers to
the other parties above named in accordance with appellee's
second order.

On April 2, 1907, the Hawthorne Hardware Company
sent a letter to appellant, which, omitting the address and
signature, is as follows: "Is Mr. Geo. E. Weiler authorized
to make and sign contracts for your company? Kindly in-
form us as to the above by return mail, and oblige." In
answer to this, appellant, under date of April 3, 1907, wrote
the Hawthorne Hardware Company as follows: "We have
yours of the 2d in reference to Mr. Weiler's authority to
make and sign contracts for us, in regard to which will
state that he has a contract with us giving him authority

to make and sign contracts for this company, and we will add that he has been very successful in closing contracts for us." On April 18, 1907, the Hawthorne Hardware Company shipped the fire extinguishers which it had received, back to appellant, sent appellant the bill of lading, and notified appellant that on account of gross misrepresentations made to it by Weiler it would have nothing further to do with him or any firm that he might represent. Appellant sent this letter to appellee. About April 20, 1907, appellee returned to appellant, by freight, the fire extinguishers which had been shipped to it, but appellant refused to accept the same. The same action was taken with reference to the extinguishers returned by the Hawthorne Hardware Company. This suit was brought to recover from the appellee the amount due under its contract with the appellant for the 800 fire extinguishers shipped to it on March 25, 1907, and the fire extinguishers shipped to the Hawthorne Hardware Company, A. W. Wheelock and C. E. Wheelock & Co.

At the close of all the evidence appellant moved the court to instruct the jury to find the issues in his favor and assess his damages at $1780. This motion being denied, appellant then moved the court to instruct the jury to find the issues in his favor as to the $1000 item in controversy. This motion was also denied. The overruling of these motions is the principal ground relied upon by appellant for reversal.

Appellee's theory of the case is, that Weiler, in executing the contracts with the Hawthorne Hardware Company, A. W. Wheelock and C. E. Wheelock & Co., was acting as appellant's agent; that the making of those contracts constituted a breach of the contract previously made with appellee; that Weiler's action in turning over to appellee orders from the parties above named, which he had secured by false and fraudulent representations, was also a breach of the contract with appellee, and that on account of such

breaches on the part of appellant, acting through his agent, Weiler, appellee was justified in rescinding the contract and refusing to pay for the fire extinguishers which had been shipped by appellant but which were afterwards returned to him.

Appellant contends that the court erred in refusing to instruct the jury to return a verdict in his favor, and in this connection first urges that Weiler was only a special agent, with limited authority, and was not authorized to enter into contracts with other parties after having concluded the contract with appellee. This was a question of fact to be determined by the jury if there was any evidence reasonably tending to show that Weiler was authorized by appellant to make the contracts in question. The evidence discloses that Weiler was in the appellant's employ as an agent; that Weiler had been sent to this State in appellant's behalf with blank contracts of agency such as were filled out and executed by the parties above named, and had previously used one of these blanks in making the contract with appellee, which appellant admits was made under authority conferred by him and which he is now seeking to enforce. On April 3, 1907, a few days after the contracts were executed, appellant, in response to an inquiry from the Hawthorne Hardware Company whether Weiler was authorized to make and sign contracts for appellant, replied that Weiler "has a contract with us giving him authority to make and sign contracts for this company," and "has been very successful in closing contracts for us." This communication was sent by appellant after he had received notice of the execution of the contract with appellee, yet, knowing that the inquiry came from territory included in that which had been allotted to appellee, appellant replied in terms which, taken in connection with the inquiry which it purported to answer, can only be reasonably construed to mean that Weiler had authority from appellant to execute contracts such as those made with the

Hawthorne Hardware Company. This evidence reasonably tended to show that Weiler was authorized by appellant to make the contracts with the parties in Elgin, Rockford and Peoria, and there was no error in the action of the court in submitting this question to the jury.

Appellant contends, however, that the court erred in admitting in evidence the letter from appellant to the Hawthorne Hardware Company, because it was a communication from appellant to a third person who was not a party to the suit. It is always proper to show the voluntary statements or admissions of a party to the suit against his interest, even though made to one not a party to the suit. The statement in the letter was an admission by appellant that Weiler was authorized to execute contracts for him, which admission was against the appellant's interest in this suit, and the court did not err in admitting the letter in evidence.

Appellant next contends that in taking the orders from the Hawthorne Hardware Company, A. W. Wheelock and C. E. Wheelock & Co., Weiler was acting as the appellee's agent under authority conferred by the appellee's letter of March 19, 1907, addressed to the Fyricide Manufacturing Company, giving Weiler "authority to take orders for Fyricide extinguishers as per terms of contract signed this date." This also was a question for the jury. The circumstances under which Weiler obtained this letter, as above set out, taken in connection with the provision of the contract between appellant and appellee requiring appellant to canvass the territory allotted to appellee and to turn over orders obtained upon such canvass to appellee, fairly tend to show that Weiler, in taking those orders, was acting as appellant's agent and not as agent for appellee, and the court did not err in submitting that question to the jury.

Appellant contends that the provision of the contract requiring him to sell, and appellee to purchase, 800 fire extinguishers at $1.25 each is severable from the other pro-

visions of the contract; that the relation of vendor and vendee was thereby created, and that under the contract appellee became liable to pay the contract price for the goods upon delivery, even though there may have been a breach by appellant of all the other provisions of the contract. In this connection appellant urges that this case has been twice appealed to the Appellate Court for the First District; that upon the first appeal that court held this provision severable from the other provisions of the contract and remanded the cause for further proceedings, and that the construction placed upon the contract by the Appellate Court upon that appeal became the law of the case, but that the same court upon the second appeal refused to follow the law as announced upon the first appeal and held said provision of the contract was not severable from the other provisions thereof. It is unnecessary to consider this question here, as the construction placed upon the contract by the Appellate Court upon the first appeal is not binding upon this court. (*Board of Trade* v. *Nelson,* 162 Ill. 431; *Zerulla* v. *Supreme Lodge,* 223 id. 518.) In our judgment the provision of the contract requiring appellee to purchase from appellant 800 fire extinguishers is so connected with and dependent upon the provision allotting to appellee the State of Illinois as the territory over which its agency should extend, that a breach of the latter provision by appellant would justify appellee in rescinding the contract and refusing to perform the former provision. The principal object of the contract was the appointment of appellee as appellant's agent for the State of Illinois. That, together with the salary and commissions attached thereto, was the sole inducement for the purchase of 800 fire extinguishers by appellee. The fire extinguishers purchased by appellee were not for its own use, nor was appellee to assume the risk of re-selling them. It was the plain intention of the parties that the 800 fire extinguishers should constitute appellee's stock as agent, out of which orders taken in its

territory could be filled, and that the so-called sale was, in fact, merely a deposit of $1000 by appellee as security for the payment of that portion of the money derived from the sales of such stock by appellee as agent which, under the contract, appellant was entitled to receive.

Appellant argues that the making of the contracts with the Hawthorne Hardware Company, A. W. Wheelock and C. E. Wheelock & Co. was not a breach of the contract made with appellee, because appellee was by the contract only constituted general agent for the State of Illinois and not exclusive agent for that territory, and that, in any event, the making of those contracts was not such a breach as would justify appellee in rescinding the contract. In a letter written by appellant to the Hawthorne Hardware Company under date of April 19, 1907, appellant advises that company that he will not recognize it in any business transaction except through appellee, "with whom we have a contract, and under which contract we could not consistently recognize anyone else in their territory." Even though the contract were susceptible of the construction here contended for by appellant, it is not the construction placed upon it by him before this litigation arose, and he will not now be heard to deny that the contract made appellee the exclusive agent in the territory assigned to it. Moreover, this same construction has been placed upon the contract by appellant's counsel in other parts of the argument in this case, as shown by the following language taken therefrom: "Mr. Freet was giving the defendant company a valuable privilege—the monopoly of the sale of goods in Chicago and the entire State of Illinois for one year."

The contention that the contracts made with the Elgin, Rockford and Peoria parties were beneficial to appellee and that the making of those contracts was not such a breach of contract as justified appellee in rescinding, is met by a mere reference to the terms of those contracts. Each infringed upon the territory theretofore allotted to appellee.

Each provided that the stock of goods required to be carried by the agent should be shipped from appellee's stock, and that provision is the only one in which appellee is mentioned. All future shipments were to be made by appellant, and all money received by the agent from sales of fire extinguishers was to be sent to appellant after deducting the agent's salary and the difference between the billing price and selling price. It would necessarily be impossible for appellant to carry out the terms of these contracts and at the same time carry out the terms of the contract with appellee. The territory given to these agents consisted of three of the important cities of this State. The making of those contracts was, therefore, a substantial breach of the contract between appellant and appellee and was not beneficial to the latter.

Appellant agreed to canvass the State of Illinois three times each year and to turn over to appellee all orders received upon such canvass. There was necessarily an implied agreement on the part of appellant that orders turned over by him to appellee to be filled from its stock should be based on *bona fide* sales. The orders turned over to appellee by Weiler, appellant's agent, were not based upon *bona fide* sales, yet appellant, after learning of the fraud of his agent in obtaining these alleged orders, insisted upon holding appellee liable for the goods shipped by him upon those fraudulent orders, and thereby violated the implied agreement above mentioned.

For these breaches on the part of appellant, appellee was justified in rescinding the contract and in refusing to pay for the goods shipped to it upon its original order and to the Hawthorne Hardware Company, A. W. Wheelock and C. E. Wheelock & Co. upon the subsequent order.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*