FOUNTAIN CRUM, Plaintiff, *v.* GULF OIL CORPORATION, Defendant-Appellee.—(CURRY AND MARCHMAN WELL SERVICING COMPANY, Third-Party Defendant-Appellant.)

Fifth District   No. 77-520

Opinion filed April 3, 1979.

Karl Dexheimer, of Pope and Driemeyer, of Belleville, for appellant.

Robert W. Wilson, of Burroughs, Simpson, Wilson, Helpler & Broom, of Edwardsville, for appellee.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Third-party defendant-appellant Curry and Marchman Well Servicing Company (hereinafter "Curry") appeals from a judgment entered against it in the amount of $90,000 in favor of third-party plaintiff-appellee Gulf Oil Corporation (hereinafter "Gulf").

In August of 1968, Fountain Crum was employed by Curry in its well-servicing operation. Pursuant to a contract with Gulf, Curry was to remove the tubing and pipe from an oil well known as Smail No. 7 leased by Gulf and located near St. Elmo, Illinois. Curry was initially contacted by John Crown, a "pumper" employee by Gulf. Crown instructed the Curry crew which consisted of Fountain Crum, the "tail-out Boy," Clifford Myers, the "operator," and William Deal, the "rod-wrencher," where to lay the tubing and pipes so that the equipment could be used in another well operation. Crown, who was responsible for inspecting Smail No. 7, then left the well site. Fountain Crum was injured when he tripped while walking backwards guiding a piece of the well equipment known as the "horse's head" which was suspended from a cable. He tripped over a flow line that was above the ground but difficult to observe because grass and weeds had grown around it.

Crum brought an action against both Gulf and Crown in the circuit court of Madison County alleging that they were negligent in one or more of the following ways:

"(a) Failed to provide adequate or any warning to persons, including the Plaintiff, of the location of said flow line on said premises.

(b) Carelessly and negligently failed to post adequate or any signs informing persons, including the Plaintiff, of the presence of the flow line above ground.

(c) Failed to install said flow line beneath the ground so as not to interfere with persons working in and about said flow line.

(d) Failed to remove the high grass covering said flow line which was placed above ground.

(e) Otherwise negligently and carelessly placed, installed and maintained said flow line."

Gulf filed an answer and brought a third-party action against Curry based upon an indemnification contract (count I) and upon an active/passive negligence theory (count II).

The jury returned a verdict in favor of Crum in the amount of $175,000 against Gulf. In addition, the jury found in favor of defendant Crown over plaintiff Crum. It also found in favor of Curry over Gulf. It answered yes to the following special interrogatory:

"Was the Gulf Oil Corporation actively negligent, which active negligence was a proximate cause of Fountain Crum's injury, if any?"

Gulf appealed from the verdict Crum recovered against it and from the judgment in favor of Curry. While the appeal was pending, Gulf settled the Crum judgment so the merits of the Crum case against Gulf were not considered by the appellate court. However, the appellate court reversed the judgment in favor of Curry for errors not relevant to the issues in this case. *Crum v. Gulf Oil Corp.* (1973), 12 Ill. App. 3d 988, 299 N.E.2d 820.

After another trial between Crum and Curry resulted in a "hung" jury, count II of the third-party complaint was presented to the court without a jury, both parties stipulating that the court could consider the transcripts of the first and second trials as evidence. On September 2, 1977, the court entered judgment in favor of Gulf in the sum of $90,000 plus attorney fees.

Curry contends that the trial court erred in finding that it was actively negligent and that Gulf was passively negligent and thereby entitled to indemnity from Curry. Curry also appeals the trial court's award of attorney fees to Gulf under the active/passive theory of indemnity.

Gulf contends that the trial court's decision should not be set aside unless clearly against the manifest weight of the evidence. However, the material facts which were submitted to the trial court for disposition solely on the transcripts of the two previous trials were basically uncontroverted. The real issue is the trial court's application of the law relating to active/passive negligence to such uncontroverted facts. As such, this case presents essentially a question of law and the rule that a reviewing court may not set aside findings of a trial court unless contrary to the manifest weight of the evidence does not apply. (*Simon v. Horan* (1944), 323 Ill. App. 527, 56 N.E.2d 147.) The correctness of a ruling on a question of law will be determined on appeal independently of the trial court's judgment. (*Lepkowski v. Laukemper* (1943), 317 Ill. App. 304, 45 N.E.2d 979.) Accordingly, the only question on review is whether the facts as stipulated sustain the judgment of the trial court. *Castle Concrete Co. v. Fleetwood Associates, Inc.* (1971), 131 Ill. App. 2d 289, 268 N.E.2d 474.

■■ In our opinion, the judgment of the trial court finding Curry actively negligent and Gulf passively negligent is not supported by the evidence. The plaintiff in the original action, Fountain Crum, tripped over a flow

line pipe which was constructed for and owned by Gulf on land leased by Gulf since 1939. John Crown, an employee of Gulf who had lived for 29 years on the property where the Smail No. 7 well was located, was responsible for inspecting the site. Although Crown was aware of the existence of the above-ground pipe, he did not apprise the Curry crew of its whereabouts. There was conflicting testimony as to whether the pipe was fully hidden by grass and weeds which had grown around it.

■■ Liability may arise out of a negligent act committed by one who has possession and control of property, without regard to the character of his interest in that property. (*Koehler v. Southmoor Bank & Trust Co.* (1963), 40 Ill. App. 2d 195, 189 N.E.2d 22.) Under Illinois law the duty of a landowner with respect to a person who comes upon the premises varies according to the status of the person. (*Gartley v. Chicago Housing Authority* (1975), 28 Ill. App. 3d 705, 329 N.E.2d 252.) In this case, Curry was hired by Gulf as an independent contractor pursuant to a contract to service Smail No. 7. As such, the Curry employees were invitees on the land leased by Gulf.

> "An invitee is a person who goes upon the premises of another by an express or implied invitation to transact business in which he and the owner have a mutual interest or to promote some real or fancied material, financial, or economic interest of the owner." *Trout v. Bank of Belleville* (1976), 36 Ill. App. 3d 83, 87, 343 N.E.2d 261.

■■ In *Hargis v. Standard Oil Co. of Indiana* (1956), 10 Ill. App. 2d 119, 134 N.E.2d 518, the court held that an individual whose duties included delivery of oil products at night in the absence of the operator's employees was an "invitee" to whom the operator of the plant owned a duty of due care. This includes a duty to warn of known latent dangers on the premises and is applicable to the servants of an independent contractor. As stated in *Calvert v. Springfield Electric Light & Power Co.* (1907), 231 Ill. 290, 83 N.E. 184:

> "The law is well settled that an owner or occupant of land who by invitation, express or implied, induces or leads others to go upon premises for any lawful purpose is liable for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist without timely notice to the public or to those who are likley to act upon such invitation, and if there are hidden dangers upon the premises he must use ordinary care to give persons rightfully upon the premises warning thereof, and that the owner owes such duty to an independent contractor or his servants while working upon his premises." 231 Ill. 290, 293.

■■■ Although a person who is passively negligent has a right to be indemnified from a person who is actively negligent, one who is guilty of active negligence has no such right to indemnification. (*Carver v. Grossman* (1973), 55 Ill. 2d 507, 305 N.E.2d 161; *Gillette v. Todd* (1969), 106 Ill. App. 2d 287, 245 N.E.2d 923.) For the indemnitee's act to be considered as only passive negligence, it must appear that he breached no affirmative duty to the plaintiff in the original cause. *Burgdorff v. International Business Machines* (1975), 35 Ill. App. 3d 192, 341 N.E.2d 122.

Recognizing that the line between "active" and "passive" negligence is often blurred, in *Moody v. Chicago Transit Authority* (1974), 17 Ill. App. 3d 113, 307 N.E.2d 789, the court made the following comment:

> "Determination of this question is not a matter of proceeding according to the ususal dictionary definitions of the words 'active' and 'passive'. These words are terms of art and they must be applied in accordance with concepts worked out by courts of review upon a case by case basis. Under appropriate circumstances, inaction or passivity in the ordinary sense may well constitute the primary cause of a mishap or active negligence [citation]. It has been appropriately stated that 'mere motion does not define the distinction between active and passive negligence.' (*Trzos v. Berman Leasing Co.*, 86 Ill. App. 2d 176, 183, 229 N.E.2d 787.)" 17 Ill. App. 3d 113, 117.

In this case the flow line over which the original plaintiff tripped was constructed for Gulf. The flow line was owned by Gulf and was located on land leased by Gulf. In *Nogacz v. Procter & Gamble Manufacturing Co.* (1975), 37 Ill. App. 3d 636. 347 N.E.2d 112, the court held that although one's failure to inspect a scaffold may create liability under the Structural Work Act, the one who builds and erects the scaffold which causes injury, as between the two, is the active tort-feasor.

Gulf contends that the trial court correctly concluded that Curry's conduct was "active" negligence in failing to comply with the Health and Safety Act (Ill. Rev. Stat. 1969, ch. 48, par. 137.3(a)) or the health and safety rules which are ancillary to the statute. These rules make it incumbent upon the employer to provide for the reasonable protection of the lives, health and safety of all persons employed by such employer. We do not find this argument persuasive. Assuming, arguendo, that Curry was actively negligent due to noncompliance with the Health and Safety Act, Gulf would not be entitled to indemnification since their negligence was also "active." In *Doerge v. Wabash R.R. Co.* (1972), 4 Ill. App. 3d 914, 282 N.E.2d 226, the plaintiff was injured after jumping from a Wabash train on which he was the engineer. Plaintiff observed an impending collision

between his train and a train owned by Terminal Railroad. In reversing the judgment of Wabash against Terminal on an active/passive indemnity theory, this court held that Terminal's presence on the wrong track did not change the character of Wabash's negligence in not providing customary lookouts. In *Parson v. Illinois Bell Telephone Co.*, 481 F.2d 458 (7th Cir. 1973), the plaintiff's auto was struck in the rear when stopped by a highway flagman employed by an asphalt paver. Plaintiff's auto was struck by Cooper who was within the scope of his employment with Illinois Bell Telephone Company. Both Cooper and Illinois Bell sought indemnification from the asphalt paving company because it violated the Illinois roads and bridges statute or the ancillary manual of uniform traffic control devices in not posting warning signs at the approaches of the road work. The court, applying Illinois law, affirmed the district court's conclusion that Illinois Bell and Cooper were not entitled to indemnity even though the paving company committed a wilful violation of the roads and bridges statute.

■■ Then too, the pleadings, the instructions, the evidence and the jury's answer to the special interrogatory in the Crum case against Gulf established that Gulf was actively negligent. Crum's judgment against Gulf therefore rests on findings of fact that are fatal to Gulf's action against Curry. Since the Crum judgment establishes as a matter of law that Gulf was actively negligent, Gulf's suit against Curry is therefore barred and Gulf is estopped from denying that its negligence substantially contributed to Crum's injuries. *Chesapeake & Ohio Ry. Co. v. Illinois Central Gulf R.R. Co.*, 564 F.2d 222 (7th Cir. 1977).

For the foregoing reasons the judgment of the circuit court of Madison County entering judgment against Curry in the amount of $90,000 and awarding attorney fees to Gulf is reversed.

Reversed.

JONES and KARNS, JJ., concur.