CYNTHIA L. LYNCH, a Minor, by Raymond L. Lynch, her Father and Next Friend, *et al.*, Plaintiffs-Appellees, *v.* THE BOARD OF EDUCATION OF COLLINSVILLE COMMUNITY UNIT SCHOOL DISTRICT NO. 10, Defendant-Appellant.

Fifth District   No. 78-393

Opinion filed May 16, 1979.

318

KUNCE, J., dissenting.

Walker and Williams, of Belleville (James C. Cook, of counsel), for appellant.

Robert C. Nelson, of Belleville, for appellees.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

This is an appeal from a jury verdict and the judgment entered thereon which awarded Cynthia Lynch $60,000 damages for injuries sustained in a powderpuff football game which took place on the Collinsville High School football field on October 27, 1974.

Plaintiff Cynthia Lynch testified that the "tackle" powderpuff football game had been a tradition at Collinsville High School for at least three or four years. Previously it had been held at halftime of the boys' homecoming games, but principal Rodney Woods later testified that when he became principal, he had ordered those games to be halted. Plaintiff Lynch testified that she had heard of the game via the school public address system announcements, posters at school and statements made by a teacher who coached the senior girls in the game. Miss Lynch then joined the junior girls' team which was coached by two teachers at the high school. The teachers conducted five or six practices for the junior girls and instructed them to purchase and wear mouthguards. Miss Lynch attended some of the practices, which were held on school property, and she changed clothes in the school locker room. There was minimal instruction on football rules given to the girls prior to the game.

On October 27, 1974, the game was played at the school football bowl. The field was surrounded by a fence and could have been barred to the players by closing the gates. One team consisted of senior girls and junior girls made up the other. During the second half of the game, which the seniors eventually won 52-0, Miss Lynch played quarterback and was hit in the face by a girl on the opposing team. She had just passed the ball when she was hit. She fell or was knocked over backwards, hitting her head on the ground. Her face was bloodied and her nose broken, and she had to be assisted from the field. She was treated at a hospital and released that evening and missed two days of school as a result of her injury. Miss Lynch testified that her behavior changed eight or nine months later, after which she couldn't get along with people. She ran away in her father's car with several other people and was apprehended by the police in both Colorado and Utah. She was taken into custody in Wyoming after the car was wrecked. She had six jobs between the time of the accident and the time of the trial, and she was fired from five of them.

Raymond Lynch testified that one of the reasons he permitted his daughter to play in the game was that he felt the game would be kept under control by the teachers present. He said that a few weeks after the game, his daughter started being harder to get along with. After the

incident in Wyoming, his daughter was admitted to a hospital in Belleville for two weeks. She was forcibly restrained while in the hospital with leather straps on her legs and arms, and she was medicated. She was treated by Dr. Busch and Dr. Jerome.

Several friends of the plaintiff and her family testified that her behavior had changed after the accident. They generally agreed that before 1974 she was friendly, outgoing, got along well with others, was not disruptive and did not have a lot of disciplinary problems; however, they observed that after the accident, she was hard to get along with, got mad easily, was a totally different person, and would be different from one second to the next.

Several school friends of the plaintiff who had participated in the powderpuff game testified that the girls were really not advised of the rules of tackle football, such as the rule against rushing the passer. Also, there was testimony that the game had been announced over the school address system, and pictures of the game appeared in the paper and the school yearbook.

Dr. Anthony K. Busch, a psychiatrist, testified that he began treating Miss Lynch on June 25, 1975, when he saw her in the hospital emergency room. At that time she was uncooperative and had to be placed in leather restraints. He prescribed Dilantin, a medication commonly used for epileptics, and ordered that an electroencephalogram (E.E.G.) be made. The E.E.G. disclosed that plaintiff had an abnormal brainwave pattern which Dr. Busch diagnosed as permanent or of lifelong duration. He testified that the abnormal brainwave can occur as a result of an injury and that one could fairly definitely say that she had had an injury. He felt that in all probability an injury was the cause for her difficulties. In response to a hypothetical question, Dr. Busch stated that quite probably Miss Lynch's abnormal brainwave pattern and behavioral difficulties were caused by the head injury which she received in the powderpuff football game.

Donald Eugene Arnold, an instructor in football at the University of Illinois, testified that the purpose of the rules in football is to promote the safety of the participants. He testified that he was not aware of any other tackle football game ever being played without any equipment whatsoever and that the football helmet is mandatory at practices at all times because of the possibility of severe head injuries. He also testified that specific rules prohibit a player from roughing the passer because of the vulnerable position of the passer after he releases the ball.

Rodney Woods, the principal of Collinsville High School, Greenwood Campus, testified that the powderpuff game in which plaintiff was injured took place at the football bowl of the school's Vandalia campus. Before Woods became principal, the powderpuff

games were sponsored by the school and took place at halftime of the boys' homecoming games, but he ordered that these games cease when he became principal. In his opinion, the game in which plaintiff was injured was not sponsored by the school. In fact, prior to the game, several students had requested that the school sponsor the game, but that request was denied. Several students were also denied permission to announce the game over the school public address system, but he did hear that an unauthorized announcement had been made, at which time he ordered an announcement countermanding it and to advise the students "that the football game that was announced on the intercom before was not correct." He also said that student groups were allowed to advertise on school bulletin boards only after first securing the permission of an assistant principal, but that often unauthorized notices are posted on the boards until discovered and removed by the assistant principal. Woods related that teachers do supervise authorized athletic events and there were teachers present at the powderpuff game. He admitted that the athletic field where the game was played was fenced and could have been closed to unauthorized use. He also testified that he never told the teachers that they could not supervise or coach the powderpuff game.

Charles Suarez, a teacher of defendant school district and coach of the junior team in the October 1974 powderpuff game, testified that the principal never told him he could not coach the girls in the powderpuff game. He stated that he was a Spanish teacher, not employed by the school as a coach, and that he received no compensation for coaching the game.

Reese Hoskins, an assistant principal at Collinsville High School, testified that he was aware that the powderpuff game was going to take place. He did not know how the girls were able to use the high school field, how they were afforded practices or why they had several teachers with them during the practices and game since the game was not authorized or permitted. He also testified that he knew that it would be a tackle game and played without equipment.

The jury returned a verdict finding for the plaintiff, Cindy Lynch, and assessing damages at $60,000. They also found for the defendant against plaintiff Raymond Lynch. The trial court entered judgment on the jury verdicts, and this appeal has followed.

Defendant school district first contends that it has no duty to fence, supervise or warn against the unauthorized use of its athletic fields. We initially note that throughout its brief, defendant insists that the powderpuff football game was an unauthorized use of its athletic field. However, we disagree with this contention. The jury returned a general verdict for the plaintiff after having been instructed that they had to determine whether defendant's agents were acting within the

scope of their authority. Two instructions adapted from Illinois Pattern Jury Instructions, Civil, No. 50.04 and No. 50.06 (2d ed. 1971), dealing with scope of authority, were given without objection from defendant. In light of these two instructions, the jury could not have rendered its general verdict in favor of plaintiff unless it determined that the defendant's employees were acting within the scope of their authority at the time of the accident. Defendants neither objected to the instructions nor requested specific verdicts as to those issues. The question of the scope of an agent's authority is one of fact for the jury to determine. (*Barkhausen v. Naugher* (1946), 395 Ill. 562, 70 N.E.2d 565.) A jury verdict will be set aside only if it is contrary to the manifest weight of the evidence. (*Lawson v. G.D. Searle & Co.* (1976), 64 Ill. 2d 543, 356 N.E.2d 779.) Here, the jury weighed the conflicting evidence. A reviewing court will not overturn a jury verdict unless it appears that, taking all evidence in light most favorably to the appellee, the conclusions reached by the jury are palpably erroneous and wholly unwarranted. (*Harris v. City of Granite City* (5th Dist. 1977), 52 Ill. App. 3d 782, 365 N.E.2d 1034.) Among the conflicting evidence, there was more than enough evidence for the jury to find that this activity was authorized by the school. The game was a tradition at the school; it was announced on the school public address system and school bulletin boards; the girls were coached by teachers; practices and games were on school property; the principal and assistant principal knew that the game was tackle football without equipment and that teachers were coaching the girls; the playing field was fenced and could have been locked to keep the girls out; and the principal did not tell the teachers they could not coach the girls. In light of this evidence in support of the jury's verdict, we hold that the game was an authorized school activity.

The case went to the jury on a four-count second amended complaint. Counts I and II related to plaintiff Cynthia Lynch, and counts III and IV were essentially repetitions of counts I and II on behalf of plaintiff Raymond Lynch. Since the jury found for defendants against Raymond Lynch and no appeal was taken from that portion of the judgment, our discussion is limited to counts I and II. In count I, Cynthia Lynch alleged ordinary negligence on the part of defendant in failing to provide adequate and appropriate equipment. In count II, she alleged wilful and wanton misconduct on the part of defendant in failing to adequately supervise the powderpuff football game.

Section 24—24 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—24) provides:

"Teachers and other certificated educational employees shall maintain discipline in the schools. In all matters relating to the discipline in and conduct of the schools and the school children,

they stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians."

The duty imposed by this section has been interpreted in several cases. In *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705, recovery was sought for injuries sustained in physical education classes. Our supreme court ruled that section 24—24 and the identically worded section 34—84a of the School Code conferred upon educators the status of parent or guardian to the students in matters relating to the discipline of the students. Accordingly, in suits arising out of "matters relating to the discipline in and conduct of the schools and the school children," to impose liability against the educators, a plaintiff must allege and prove wilful and wanton misconduct, rather than ordinary negligence.

In *Gerrity v. Beatty* (1978), 71 Ill. 2d 47, 373 N.E.2d 1323, the supreme court ruled that there is a distinction between suits alleging negligence arising out of the teacher-student relationship in matters relating to the teacher's personal supervision and control of students, and suits alleging negligence in the separate function of furnishing equipment alleged to be inadequate, ill-fitting and defective. *Kobylanski* was an example of the former type of case, involving a teacher's disciplinary and supervisory authority where, because of the teacher's *in loco parentis* status, recovery could not be had for ordinary negligence but only for wilful and wanton misconduct. The court held that policy considerations of the personal relationship desired between teacher and student require teachers to have broad discretion and latitude in respect to such situations. However, the *Gerrity* court found that furnishing football equipment for students was a separate and distinguishable function, and in this respect, public policy considerations dictate against any interpretation that would relax a school district's obligation to insure that equipment provided for activities of the type of football is fit for the purpose. For this function, the school districts are held to a duty of ordinary care. Thus, to recover for injuries received due to inadequate equipment, a student need only show ordinary negligence, rather than wilful and wanton misconduct. As noted previously, count I of the second amended complaint charged defendant with ordinary negligence in failing to provide adequate and appropriate equipment for the powderpuff football game, and count II charged wilful and wanton misconduct on the part of defendant in failing to adequately supervise the powderpuff football game. The allegations of count I were appropriate under *Gerrity*, and those of count II were appropriate under *Kobylanski*.

Since the jury returned a general verdict in favor of plaintiff, it is impossible to ascertain whether the defendant was found guilty of wilful and wanton misconduct, as required by *Kobylanski*, or ordinary negligence, as found to be permissible under *Gerrity*. It is our opinion that the evidence adduced at trial was sufficient to justify the jury to return a verdict on either basis. We hold that it is unnecessary to determine upon which theory the jury found the defendant responsible.

■■ ■ Defendant argues that under the provisions of section 24—24, stating that the relationship of parent or guardian to the students in matters relating to the discipline and conduct of the students "\* \* \* may be exercised at any time for the safety and supervision of the pupils *in the absence of their parents or guardians*" (emphasis supplied), should be construed to mean that no liability may attach under section 24—24 because plaintiff's parents were present at the powderpuff football game. Defendant has cited no authority for the proposition that it is freed from its obligation to refrain from wilful and wanton misconduct in the supervision of an authorized school activity merely because of the fortuitous presence of the student's parents, and we are not inclined to so construe the statute. The relationship conferred by section 24—24 extends to teachers the status of a parent regarding matters of supervision and discipline. Thus, under *Kobylanski*, teachers, like parents, are liable only for wilful and wanton misconduct arising out of the teacher-student relationship in matters relating to the teachers' personal supervision and control of the conduct or physical movement of the student. This supervision and control may be exercised by the teachers in the absence of the students' parents or guardians. However, the furnishing of unsafe equipment or, as here, the failure to furnish any equipment for the use of the participants in a tackle football game is not the type of school activity over which students' parents were in a position to exercise any control. There is evidence that the game was planned, announced and practiced without the presence of plaintiff's parents. The decision to play tackle football without any equipment was made without consulting the parents of the participants. The purpose of section 24—24 is to extend to teachers the limited liability of parents in matters relating to the teachers' personal supervision and control of the conduct or physical movement of a student. Public policy considerations argue rather strongly against any interpretation which would relax a school district's obligation to provide suitable equipment for students engaged in this type of activity. (See *Gerrity*.) It is our decision that under section 24—24, teachers and other certified educational employees are charged with the duty of maintaining discipline in the schools in all events; and that in all activities connected with the school program, in the absence of the students' parents or guardians, they may exercise the status created by the section for the

safety and supervision of the pupils. It is impossible to conclude that defendant was relieved of the duty to provide safe equipment for the participants in a tackle football game on the grounds that the plaintiff's parents were physically present. Her parents exerted no control or supervision over her activities either before or during the game, and their mere presence does not operate to alleviate the responsibilities imposed by the supreme court in *Gerrity.*

Defendant contends that *Chimerofsky v. School District No. 63* (1st Dist. 1970), 121 Ill. App. 2d 371, 257 N.E.2d 480, requires reversal here. In *Chimerofsky,* the plaintiff was a 3½-year-old boy who suffered injuries when he fell from a school playground slide. The trial court dismissed the complaint, and the appellate court affirmed, reasoning that the social utility of furnishing playgrounds was a commendable governmental function which outweighed the burden of guarding against playground injuries arising from nondefective equipment. Defendant urges that under *Chimerofsky,* a school district has no duty to fence, supervise, or warn of injuries which may arise from the unauthorized use of school athletic fields. This argument overlooks the fact that the activity here was an authorized activity as discussed earlier in this opinion. On that basis, *Chimerofsky* is distinguishable from this case and, therefore, not controlling.

We are likewise unimpressed with defendant's argument that to affirm this decision would impose an unreasonable burden on all school districts and would make school districts virtual insurers of anyone who participates in a pickup football game on school property. The authorized football game in this case is clearly distinguishable from a pickup game.

■■ For the foregoing reasons, we hold that the school district owed two duties to plaintiff under section 24—24 of the School Code and the holdings of *Kobylanski* and *Gerrity.* These were the duty of ordinary care in providing adequate equipment and the duty to be free of wilful and wanton misconduct in matters relating to the discipline in and conduct of the schools and the school children.

■■ Defendant next contends that the court erred in giving plaintiff's instruction No. 30 to the jury. Instruction No. 30 is adapted from Illinois Pattern Jury Instructions, Civil, No. 60.01 (2d ed. 1971) and is based on section 16—8 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 16—8). The instruction states:

> "There was in force and effect in the State of Illinois at the time of the occurrence complained of a certain statute which provided that: the school board of any school district acquiring real estate and equipping, operating and maintaining it for the purposes provided, shall have supervision over athletic fields, and may employ play leaders, playground directors, supervisors,

recreational superintendents, or athletic directors thereof, and may take such steps to provide for the protection thereof as it deems appropriate."

Section 16—8 of the School Code provides:

"The school board of any such school district acquiring real estate and equipping, operating and maintaining it for the purposes provided in Section 16—7 shall have supervision over such playgrounds, recreation grounds or athletic fields, may employ play leaders, playground directors, supervisors, recreation superintendents or athletic directors therefor, and may take such steps to provide for the protection, sanitation, care and management thereof as it deems appropriate.

If real estate so acquired lies partly or wholly outside and within 1 mile of the corporate limits of any city, village or incorporated town situated in such district, such city, village or incorporated town shall exercise police control and protection over such real estate and its equipment in the same manner and to the same extent that such city, village or incorporated town would exercise police control and protection thereover if such real estate were situated within the corporate limits thereof." Ill. Rev. Stat. 1973, ch. 122, par. 16—8.

Defendant objects to this instruction as attempting to impose a duty upon the school district to supervise the football field, contrary to *Chimerofsky* and *Kobylanski*. As discussed earlier, *Chimerofsky* is distinguishable from this case, and *Kobylanski* has been limited in application by *Gerrity*. We find no error in the giving of Plaintiff's Instruction No. 30 to the jury.

Defendant next contends that the jury verdict was against the manifest weight of the evidence. The jury returned a general verdict for the plaintiff after being instructed on the applicable law. A jury verdict will only be set aside if it is contrary to the manifest weight of the evidence. (*Lawson v. G.D. Searle & Co.* (1976), 64 Ill. 2d 543, 553, 356 N.E.2d 779; *Lau v. West Town Bus Co.* (1959), 16 Ill. 2d 442, 451, 158 N.E.2d 63.) A reviewing court will not overturn a jury verdict unless it appears that when taking the evidence in a light most favorable to the appellee, the conclusions reached by the jury are palpably erroneous and wholly unwarranted. *Harris v. City of Granite City* (5th Dist. 1977), 52 Ill. App. 3d 782, 784, 365 N.E.2d 1034.

In the instant case the jury verdict is not palpably erroneous and wholly unwarranted. We conclude that the jury verdict was not against the manifest weight of evidence.

Defendant finally contends that the jury verdict was excessive and palpably contrary to the manifest weight of the evidence. The jury

awarded $60,000 to the plaintiff for an injury which caused an abnormal brainwave pattern which was diagnosed to be of permanent or of lifelong duration.

■■ The amount of a verdict is primarily within the province and discretion of the jury. (*Lau v. West Town Bus Co.* (1959), 16 Ill. 2d 442, 452, 158 N.E.2d 63, 69; *Carlson v. Dorsey Trailers, Inc.* (1st Dist. 1977), 50 Ill. App. 3d 748, 755, 365 N.E.2d 1065.) A jury verdict will be set aside if it is so large as to indicate passion or prejudice. *Lau.*

■■ The jury verdict in the instant case is not so large as to indicate passion or prejudice. The jury awarded damages for what was diagnosed as a lifelong or permanent injury. There is evidence that the plaintiff's injury has made it difficult for her to retain employment. We conclude that the verdict was not excessive.

For the reasons stated above, the judgment of the Circuit Court of Madison County is affirmed.

Affirmed.

G. MORAN, P. J., concurs.

Mr. JUSTICE KUNCE, dissenting:

A school board has no legal duty to supervise the type of activity as shown by the facts of the instant case. Although physical education and varsity athletics are integral parts of most all school programs, there is no evidence in this record that the powderpuff football game had any connection with such programs or with any other school program. The game did not take place at the halftime of a varsity football game. Neither the school board, the principal of the school nor anyone in authority authorized the game. Unpaid teachers were present at the game, but there is no record of anything that they did while there being authorized, directed or controlled by the school authorities so as to create an agency relationship. Failing to instruct a teacher not to participate in after-school or weekend activities of pupils by the principal or other school authorities does not in my opinion constitute consent to, approval of or result in responsibility for such activities. The plaintiffs totally failed to prove any conduct of the school board or its authorized agents that was the proximate cause of plaintiff's injuries.

The majority opinion states that the jury weighed the *conflicting* evidence; however, there was, in fact, no conflict in evidence bearing on the question of this being an *authorized* school activity. The game being a school tradition at one time but since discontinued as such, being announced on the school's public address system and bulletin boards without authority, being coached by teachers off duty and not being paid,

being on unlocked school property, with knowledge of the principal and his assistant of the game and not admonishing the teachers to not participate in the same, do not in my opinion constitute any evidence that the activity was authorized by the defendant and are wholly insufficient to impose any duty on the district. This testimony did not conflict with the evidence presented by the district that the game was not an authorized school activity. The testimony of the principal that he ordered the games discontinued when he became principal, that the game was not sponsored by the school and the pupils' request for sponsorship was denied, that the announcement of the game over the school's public address system was unauthorized and countermanded on his order and that he did not authorize the teachers to supervise or coach the game was in no way disputed or contradicted by any evidence presented by the plaintiffs. The testimony of the teacher, Suarez, and the assistant principal was no evidence of board authorization for the conduct of the game, its supervision or equipment to be used. It was all negative testimony that failed to support plaintiffs' burden of proving that the game was authorized. The testimony presented by the plaintiffs in an attempt to prove an authorized and supervised game is, at the most, pure speculation that was clearly controverted by the direct, unequivocal and positive evidence presented by the board. Even if we assumed, *arguendo*, that plaintiffs' testimony presented some controverted facts, the jury's verdict under all of this record is palpably erroneous, wholly unwarranted and clearly contrary to the manifest weight of all the evidence.

The real question before this court is whether the facts are in dispute, and it is my opinion that they are not. The question on review, then, is whether the facts sustain the judgment of the trial court. The material facts submitted to the jury on the question of authority of alleged agents on which a finding of duty could be established were basically uncontroverted. We have before us essentially a question of law, and the rule of law on which the majority rely that a reviewing court may not set aside findings of the trier of fact unless contrary to the manifest weight of the evidence does not apply. *Simon v. Horan* (1944), 323 Ill. App. 527, 56 N.E.2d 147; *Crum v. Gulf Oil Corp.* (5th Dist. 1979), 70 Ill. App. 3d 897, 388 N.E.2d 1008.

The nature and extent of an agency are facts to be proved by the plaintiffs, but if they are not in dispute or in conflict, the question becomes one of law to be determined by the court. (*Freet v. American Electrical Supply Co.* (1913), 257 Ill. 248, 100 N.E. 933). An agent's source of authority is the principal, and the power of the agent to bind can only be proved by tracing it to that source by some word or act of the principal. (*Merchant's National Bank v. Nichols & Shepard Co.* (1906), 223 Ill. 41, 79 N.E. 28.) The fact of agency or authority, when disputed or denied, must

ordinarily be established by evidence of the acts or conduct of the principal or by statements to the agent or third persons. (*Kapelski v. Alton & Southern R.R.* (5th Dist. 1976), 36 Ill. App. 3d 37, 42, 343 N.E.2d 207, 210.) There are no acts, conduct or statements either expressed or implied of the defendant board giving their employees any authority to participate in, supervise or furnish equipment for this game.

It is my opinion that the girls' football game in the instant case was an unauthorized, noncurricular activity as a matter of law. The principle announced in *Chimerofsky v. School District No. 63* (1st Dist. 1970), 121 Ill. App. 2d 371, 257 N.E.2d 480, would therefore apply, and the board should not be held responsible for such injuries since it had no duty to provide equipment or to supervise this type of activity and should not be liable in damages to one voluntarily enjoying the unrestricted use of its premises to play games.

Further, I believe the trial court erred in giving plaintiffs' instruction No. 30 to the jury. Section 16—8 of the School Code merely states the purposes for which school districts may acquire and use real estate owned by them. This statute informs school districts that they "may" employ play leaders, playground directors, supervisors, etc., for their playgrounds, recreation grounds or athletic fields. By giving this instruction, the jury could very well have been led to believe that because a statute authorized the supervision of the field that such supervision was mandated by the statute and thus the district's duty to do so requiring school personnel to be present to supervise the football field when any game or activity was in progress. This statute does not impose such a duty. Evidence tending to prove the violation of a statute or city ordinance, adapting the same to Illinois Pattern Jury Instructions, Civil, No. 60.01 (2d ed. 1971) (hereinafter IPI) should not be given unless the statute is intended to protect against the injury in question.

This statute is permissive—it cannot be violated. It provides that school districts are permitted to acquire and maintain property for the purposes set out and may employ play leaders, etc. It does not require the district to do so. It may if it wishes, but the statute sets no standards for maintenance, operation, equipping or supervision for the purposes provided.

Our supreme court pointed out in *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 390, 356 N.E.2d 93, 97, that "the violation of a statute or ordinance designed for the protection of human life or property is *prima facie* evidence of negligence." By merely giving this instruction, the jury were told that this statute was in effect passed by the legislature for the purpose of protecting life or property and that if violated, it constituted evidence of negligence, whereas, this statute was not so designed. It has no application or relevance to the question of negligence

or wilful conduct of the district. As the comments to the Illinois Pattern Jury Instructions point out: "If the statute or ordinance is not intended to protect against the type of injury in question, [citation], or if the injured party is not within the protected class, [citation], *the statute or ordinance should not be called to the jury's attention.*" (Emphasis supplied.) IPI Civil No. 60.01, Comment, at 252 (2d ed. 1971).

The instruction as given erroneously informed the jury that the defendant had a duty not imposed on it by statute or by judicial decision.

Accordingly, for the reasons stated, I respectfully dissent and would reverse the judgment of the trial court of Madison County.